Rockingham,
Jan. 3, 1950. } No. 3864.

STATE *v.* CLYDE STURTEVANT.

*William L. Phinney,* Attorney-General and *Wyman P. Boynton,* County Solicitor (*Mr. Boynton* orally), for the State.

*William H. Sleeper* and *Wayne J. Mullavey* (*Mr. Mullavey* orally), for the respondent.

DUNCAN, J. At the close of the preliminary hearing at which the circumstances surrounding the taking of the blood specimen from the respondent were disclosed, the respondent voiced his objection to the receipt of evidence of the analysis thus: "We claim . . . that it is calling the defendant to furnish evidence against himself at a time when he was neither told nor in condition to know what his legal rights and what the implications of such procedure would be. . . . " There was no substantial change in the respondent's position, and the argument advanced before us is that the taking of the blood and the use made at the trial of the analysis which followed were a violation of the respondent's rights under Art 15th of the Bill of Rights which provides in part as follows: "No subject shall . . . be compelled to accuse or furnish evidence against himself."

The findings of the Trial Court leave in doubt whether the respondent's consent to the taking of the blood sample was "freely" given, and whether such consent amounted to a valid waiver of a constitu-

tional right (See *State* v. *Ellard*, 95 N. H. 217), if the taking of the sample came within the prohibition of the constitutional provision quoted above. At the outset it may be noted that the issue before us is not affected by the rules which govern the receipt in evidence of confessions of crime. The requirements which there pertain, designed to permit receipt of only such confessions as may be trustworthy, are not applicable here. While the preliminary hearing was somewhat concerned with the question of whether submission to the taking of the sample was "induced by threat, promise, fear, or hope" (*State* v. *George*, 93 N. H. 408, 417), the principle to which such an inquiry relates may not properly be invoked. A confession is "an acknowledgment in express words." Wig. Ev. (3rd *ed.*) s. 821. "That which is not an assertion . . . can therefore not be within the scope of such a principle; its probative use is not testimonial, but circumstantial. . . ." *Id.* See also, Wig. *op. cit.* s. 2266. It is apparent that no assertion by the respondent is involved here; and no promise, threat or hope could affect the analysis to which the objection relates. See *State* v. *Graham*, 74 N. C. 646, 647.

If the respondent was "in a confused state of mind" and may not have been "mentally capable . . . of freely giving his consent" that circumstance can be material only because his consent was essential to an effective waiver of his constitutional privilege not to "furnish evidence against himself." If consent is material, we are bound by the findings of the Court to consider that it was not shown to have been intelligently given. We are thus squarely faced with the question of whether evidence of a blood analysis is admissible in evidence over the constitutional objection previously stated, where it appears that the sample analysed was obtained without force, before arrest, at a time when the accused is not shown to have been capable of consent.

The constitutional provision invoked appears with varying phraseology in our Federal Constitution and those of most of the States; but because of their common historical origin, the variations are not considered to alter the essential meaning. Wig. Ev. (3rd *ed*), s. 2252; *State* v. *Cram*, 176 Ore. 577, 580. Whatever their form, the purpose of the provisions may be regarded as uniform: to protect an accused "from any disclosure sought by legal process against him as a witness." Wig., *op. cit.* s. 2263. No useful purpose would be served by reiteration of the historical background which prompted constitutional guarantee of the privilege. It is reviewed at length in Professor Wigmore's treatise, *ss.* 2250-2252. It is sufficient for our purposes to

recognize that the authorities establish the privilege to be one against testimonial compulsion only, and that it is inapplicable to cases such as this, where the evidence is real rather than testimonial. See cases collected by Wigmore, *op. cit., ss.* 2263-2266; note, 17 Minn. L. Rev. 187.

As applied specifically to the question of making a blood test for intoxication, it must be recognized that the authorities are lacking in agreement upon the effect of the privilege against self-incrimination. Uniformity is likewise absent with respect to other constitutional objections sometimes advanced to the admissibility of evidence such as was here received. Many of the cases are collected and reviewed in articles by Ladd and Gibson appearing in 24 Iowa L. Rev. 191 (1939) and 29 Va. Law Rev. 749 (1943), as well as annotations in 127 A. L. R. 1513 and 159 A. L. R. 209.

We consider the better view, and that which we do now adopt,to be that expressed by the court in the recent case of *State* v. *Cram, supra*. After reviewing the authorities at length, the court there held evidence such as was here received to be admissible over the constitutional objection here urged, although it there appeared that the respondent was unconscious and hence incapable of giving his consent at the time the blood specimen was taken. The court quoted with approval the language of Mr. Justice *Holmes* in *Holt* v. *United States*, 218 U. S. 245, 252, 253, which is not out of place here: "But the prohibition of compelling a man in a criminal court to be a witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material." See also, *State* v. *Flynn*, 36 N. H. 64; *People* v. *One Mercury Sedan*, 74 Cal. App. (2d) 199; A. L. I. Model Code of Evidence, Rule 205; Inbau: "Self-Incrimination— What Can An Accused Person Be Compelled To Do." 28 J. Crim. L. 261.

Other authorities have reached a comparable result where the evidence disclosed no compulsion or resistance in the taking of a specimen for analysis. *State* v. *Duguid*, 50 Ariz. 276; *People* v. *Tucker*, 88 Cal. App. (2d) 333: *State* v. *Cash*, 219 N. C. 818; *State* v. *McQuilkin*, (Utah) 193 P. (2d) 433. See also, *State* v. *Gatton*, 60 Ohio App. 192; *McFarland* v. *United States* 150 F. (2d) 593, *cert. den.*, 326 U. S. 788; *Green Lake County* v. *Domes*, 247 Wis. 90; *State* v. *Graham, supra.*

Cases such as *State* v. *Weltha*, 228 Ia. 519, where comparable evidence was held inadmissible because of constitutional provisions against unreasonable search and seizure, must be distinguished. In

the case before us no objection was made to the evidence upon the ground there held to be controlling. But it may be noted that the view entertained in the *Weltha* case does not prevail here. Such a defense depends upon provisions of the Fourth Amendment to the Federal Constitution. The Federal rule, by which evidence secured through an illegal search and seizure is excluded (*Weeks* v. *United States*, 232 U. S. 383) is not binding upon the States. *Wolf* v. *Colorado* (U. S.), 69 S. Ct. 1359. The doctrine of the *Weeks* case has not been adopted here, either before its announcement (*State* v. *Flynn*, 36 N. H. 64; see *Boynton* v. *Trumbull*, 45 N. H. 408, 410) or since (*State* v. *Agalos*, 79 N. H. 241). In this respect New Hampshire is said to be in company with twenty-nine other states. *Wolf* v. *Colorado, supra,* 1362. Moreover, the facts of this case would not invite reconsideration of the rule of *State* v. *Agalos*. The exceptions to the receipt of the evidence of the blood analysis are overruled.

In the course of direct examination of a medical expert called by the State to establish the effect upon the human system of the quantity of alcohol disclosed by the analysis, the witness undertook to describe specialized tests which had been made in the field, and referred to tests made by an investigator in California. Over the respondent's objection upon the ground of hearsay, he was permitted to testify that driving ability was there found to be impaired by alcoholic concentration in a range which included the concentration shown by the analysis in this case. The testimony was admissible in the discretion of the Trial Court. It was conceded that the witness was qualified as an expert in the field in question. His knowledge was necessarily based in part upon study of the experience and knowledge of others. "The law must and does accept this kind of knowledge from scientific men." Wig. Ev., s. 665 b. The witness' personal observations on the subject qualified him to appraise the probable value of the work of others, and it was not error to permit him to disclose the source of information which he was satisfied to adopt. The fact that the source was not shown to be a standard source (Cf. *Carbone* v. *Railroad*, 89 N. H. 12, 20) went to the weight of the testimony rather than its competency. *Ill. Steel Co.* v. *Fuller*, 216 Ind. 180, 188, 189; *Finnegan* v. *Gas Works Co.*, 159 Mass. 311; Wig., *op. cit. s.* 687 (2). See also, *Taylor* v. *Railway*, 48 N. H. 304, 306, 311; *State* v. *Wood*, 53 N. H. 484, 494, 495. *Ricard* v. *Insurance Co.*, 87 N. H. 31. Admission of the testimony was not an abuse of discretion.

Subject to exception, the State was permitted to show by cross examination of the respondent that he was convicted in 1942 of opera-

ting a motor vehicle while under the influence of intoxicating liquor. The jury was instructed to consider the evidence solely upon the issue of credibility. This was proper cross-examination. *State* v. *Travis*, 82 N. H. 220. See also, *Constantine* v. *Grenier*, 81 N. H. 550. On redirect examination the respondent's counsel undertook to show mitigating circumstances by testimony calculated to convey the impression that the respondent had not in fact been intoxicated. On recross examination, he denied that he had been "under the influence," and subject to objection and exception by his counsel, denied that he had then been drunk. The Solicitor was then permitted subject to exception to inquire whether he was convicted of drunkenness on the same occasion. The witness denied it, and the State introduced in evidence without objection the record of such a conviction. The inquiry to which exception was taken was within the range of permissible examination. The evidence was not sought, as in *Genest* v. *Company*, 75 N. H. 365, from an independent source. It was sought from the respondent for the purpose of impeaching specific testimony offered by him as to a particular instance; and it culminated in contradiction. In permitting the examination the Court did not exceed discretion. "The extent to which cross-examination may be carried to disparage the credibility of a witness is a question of fact to be determined at the trial." *State* v. *Fogg*, 80 N. H. 533, 534. These exceptions are without merit.

At the close of the State's evidence, and at the close of all the evidence, the respondent moved for a directed verdict. These motions were properly denied. On each occasion the respondent also moved to withdraw from the jury the issue as to each overt act or failure to act alleged by the indictment to constitute a part of the alleged reckless conduct of the respondent. There was evidence to warrant a finding that each contributed to cause the collision. The State was entitled to full consideration of the evidence, and there was no error in the denial of the motions.

In instructing the jury, the Court enumerated the several overt acts alleged by the indictment to constitute reckless operation, and charged: "If you are satisfied beyond a reasonable doubt that the respondent Sturtevant was remiss in one or more or all of these allegations and that such conduct constituted reckless driving, your verdict will be 'guilty.'" The Court saved the respondent an exception upon the ground that "an additional requirement [was that it] be the proximate cause of the death." The respondent also submitted two requests for instructions which presented the issue of

causation, and excepted to the denial of his requests "except insofar as they are covered by the charge." While it is true that the requirement of causation was not specified in the particular instruction to which exception was taken, it was clearly stated in instructions immediately preceding: " . . . you could not find the defendant guilty in this case unless you also find (1) that such operation . . . amounted to recklessness . . . and (2) that such reckless operation while under the influence caused the death of Christine Oddy." The requirement of causation was further emphasized by supplementary instructions, given after exceptions were taken, by which the jury was told that "it is disputed by Mr. Sturtevant that he was in any way responsible of the claim of reckless operation as I have defined it to you, and that such reckless operation caused the decease of Miss Oddy." Taking the charge as a whole, the jury could not have failed to understand that the issue of causation was submitted for their determination.

There was no error in the denial of the motions filed after the verdict. The power of the Court to recall and interrogate the jury was one to be exercised if the Court found that justice required it, and no abuse of discretion is disclosed. *Caldwell* v. *Yeatman*, 91 N. H. 150, 155; *State* v. *Ellard*, 95 N. H. 217; *Clark* v. *Manchester*, 64 N. H. 471; *Curtis* v. *Car Works*, 74 N. H. 600. The motions to set aside the verdict presented no issues not saved by previous exception (*State* v. *Proctor*, 91 N. H. 347; *State* v. *Grierson*, *ante*, 36), or not also involved in the motion to poll the jury.

The motions for a new trial were grounded upon the statute (R. L., c. 398, s. 1), as well as express allegations of "misfortune" and "unfairness" which are substantially the grounds specified by the statute. The denial of the motions implied a finding that the trial was fair. *State* v. *Hale*, 85 N. H. 403. One of the motions alleged newly discovered evidence as a further ground. The Court made no finding upon the question of diligence (see *State* v. *Long*, 90 N. H. 103, 107) but found that "upon a new trial a different result is not probable." In each instance denial of the motions implied a determination of fact which is here final because supported by the record. *State* v. *Long, supra; State* v. *Wren*, 77 N. H. 361, 366. The evidence relied upon to support the motion grounded upon newly discovered evidence consisted primarily of indications that Miss Oddy had consumed an unspecified quantity of unidentified alcoholic beverage before the accident. The respondent sought to relate this to evidence at the trial that following the accident she was heard to say, "I shouldn't have done it." Since her conduct at the time of the accident was

fully disclosed at the trial, the newly discovered evidence cannot be said to require a finding that a different verdict would probably result. The evidence was collateral to the point decided by the verdict. See *State* v. *Danforth*, 73 N. H. 215, 221. If Miss Oddy had imbibed, that fact could not affect the finding that the respondent operated a motor vehicle recklessly, or the finding that his misconduct resulted in her death. Similarly the evidence would add nothing to that presented to the jury concerning the manner in which Miss Oddy operated her automobile. Proof of a possible cause of her conduct would not change the conduct. In no event could the new evidence operate to exculpate the respondent.

Other evidence offered in support of the motion consisted of the testimony of newly discovered witnesses to the collision. Their testimony was merely cumulative, and would not warrant a new trial. *McGinley* v. *Railroad*, 79 N. H. 320. See *State* v. *Bassett*, 93 N. H. 62; *Watkins* v. *Railroad*, 80 N. H. 468. The conclusion of the Trial Court cannot be held unreasonable. The exceptions to the denial of the various motions are overruled.

Numerous other exceptions were taken which were neither briefed nor argued, but have not for that reason been disregarded. It is not perceived that any of them discloses error.

*Exceptions overruled.*

All concurred.