Belknap
No. 84-509

# The State of New Hampshire

v.

# Maureen Cormier

August 16, 1985

*Stephen E. Merrill*, attorney general (*Tina Schneider*, attorney, on the brief, and *Steven L. Winer*, attorney, orally), for the State.

*Murphy, McLaughlin & Hemeon P.A.*, of Laconia (*Matthew J. Lahey* on the brief and orally), for the defendant.

SOUTER, J. The defendant was convicted of the misdemeanor of operating a motor vehicle while under the influence of intoxicating liquor. RSA 265:82 (Supp. 1983) and RSA 265:82-b, I(b) (Supp. 1983). At trial she invoked the privilege against compelled self-incrimination in objecting to the introduction of evidence that she had refused to submit to a chemical test for blood alcohol content. The Superior Court (*Cann*, J.) overruled the objection. We affirm.

Following the defendant's arrest for operating a motor vehicle while under the influence of intoxicating liquor (DWI), the police requested that she provide a sample of breath or bodily fluid to test in order to determine the amount of alcohol in her blood. RSA 265:84 (Supp. 1983) (the implied consent law). When the defendant refused to provide a sample the police took none, *see* RSA 265:89, but at her subsequent jury trial, the State sought over her objection to introduce evidence of her refusal, as permitted by RSA 265:88-a (Supp. 1983):

> "If a person refuses to submit to a test as provided in RSA 265:84 [Supp. 1983], such refusal may be admissible into evidence in a civil or criminal action or proceeding arising out of an act alleged to have been committed by that person while driving or attempting to drive a motor vehicle while under the influence of intoxicating liquor or any controlled drug."

The defendant did not deny that her refusal was probative of guilt, but based her objection on the ground that the introduction of the evidence of refusal would violate her privilege against compelled self-incrimination.

After the trial court had overruled the objection, the following question and answer ensued:

"Q. Did she agree to take the test that evening?

A. No, she refused to."

The jury returned a verdict of guilty, and the defendant appealed on the ground that the court committed constitutional error in admitting the testimony in question.

The defendant presses no claim under the fifth and fourteenth amendments of the Constitution of the United States, since the Supreme Court rejected such a contention in *South Dakota v. Neville*, 459 U.S. 553 (1983). Instead, she rests her argument on the State counterpart of the fifth amendment, contained in the language of part I, article 15 of the Constitution of New Hampshire, that no one shall "be compelled to accuse or furnish evidence against himself."

■■ An objection resting on this language from article 15 may raise two basic questions: does the evidence in question fall within the scope of evidence to which the article applies, and did the action of the State in obtaining that evidence constitute compulsion? Taking up the first question, it is settled law that article 15 applies only to evidence provided by a defendant that is of testimonial character.

> "Historically [the privilege against compelled self-incrimination] originated as a reaction to the practice in the early English courts of compelling a witness to be sworn and give testimony concerning his guilt. 8 J. Wigmore, Evidence § 2250 (McNaughton rev. 1961, Supp. 1972); C. McCormick *et al.*, Evidence §§ 114–17 (2d ed. 1972). 'In the light of this history the textwriters and the overwhelming majority of the courts have limited the scope of the privilege to . . . "testimonial compulsion," i.e., "compulsion to do those things which a witness would by traditional judicial processes be required to do."' *State v. King*, 44 N.J. 346, 357, 209 A.2d 110, 116 (1965)."

*State v. Arsenault*, 115 N.H. 109, 112, 336 A.2d 244, 246 (1975); *see also State v. Sturtevant*, 96 N.H. 99, 103, 70 A.2d 909, 911–12 (1950). Article 15, like similar guarantees in other States, is thus comparable in scope to the fifth amendment. *State v. Arsenault, supra* at 112,

336 A.2d at 246; *see South Dakota v. Neville supra; Schmerber v. California,* 384 U.S. 757 (1966).

■ Since such provisions apply only to testimonial evidence, "both federal and state courts have usually held that [the privilege against compelled self-incrimination] offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." *Schmerber v. California, supra* at 764 (footnote omitted). With particular relevance to the latter part of this opinion, it is clear that the bar against compelled evidence does not extend to physical evidence such as a sample of a defendant's blood, *see State v. Sturtevant supra,* or to demonstrations provided by the performance of field sobriety tests, *see State v. Arsenault supra.*

While such examples of testimonial and non-testimonial evidence are easy to give, there are some instances of evidentiary behavior that do not fit neatly on one side of the line or the other. *See South Dakota v. Neville,* 459 U.S. at 561-62. In the present case, as in *Neville,* the defendant's refusal was communicative in the sense that it was the communication of a decision, but it was not testimonial in the sense that it was not an act "which by traditional judicial process [a witness would] be required to do." *State v. Arsenault,* 115 N.H. at 112, 336 A.2d at 246. The dissenting justices in this case choose to emphasize the communicative function of the defendant's statement in concluding that it is evidence to which article 15 applies.

As the discussion in the latter part of this opinion will indicate, however, there are good reasons for holding that the refusal should be viewed as an act of choice to suppress physical evidence and, therefore, as non-testimonial for purposes of applying the provisions of article 15. *See, e.g., People v. Ellis,* 65 Cal. 2d 529, 421 P.2d 393, 55 Cal. Rptr. 385 (1966) (refusal to provide voice sample is non-testimonial); *People v. Sudduth,* 65 Cal. 2d 543, 421 P.2d 401, 55 Cal. Rptr. 393 (1966) (refusal to furnish breath sample for breathalyzer constitutionally admissible), *cert. denied,* 389 U.S. 850, *reh'g denied,* 389 U.S. 996 (1967). This is in fact the majority view. *See South Dakota v. Neville, supra* at 560-61 and cases collected at n.11.

Nevertheless, we do not believe that the case should turn on the resolution of this issue. For whether the refusal be regarded as testimonial or not, we believe that it cannot reasonably be classified as compelled.

The defendant's argument that her refusal was compelled begins with the assertion that the State imposed upon her the obligation to choose between submitting to a test by providing a sample or refus-

ing to do so. Since both alternatives were bad from her standpoint, she argues that her choice was not free but compelled.

In addressing this argument, the first question must be whether to accept its terms. For if one initially accepts the premise that the State has "imposed" on the defendant a choice or option of submitting or refusing to submit, then it is easy to characterize the act of choice as involuntary. But to accept that premise is to miss the very issue in this case. That issue is whether it is reasonable to say that the State has "imposed" a requirement to choose, such that the choice of refusing to provide a sample should be considered to be "compelled." For the reasons that follow, we conclude that the requirement to choose should not be regarded as "imposed" and that a refusal should not be regarded as "compelled."

To determine whether the requirement to choose can reasonably be said to be imposed, it is necessary to be clear about the subject of the choice and the source of the defendant's power to make the choice in a way that will be effectual for legal purposes. As we have noted before, the choice is one to provide or to refuse to provide a sample of bodily substance, such as blood, urine or breath, that can be tested chemically to determine blood alcohol content. It is important to recognize that neither the State nor the National Constitution provides or guarantees that a defendant will have this choice.

It is settled law that a healthy driver arrested for DWI has no constitutional right to refuse to provide a sample for a blood alcohol test. The privilege against self-incrimination does not require the State to obtain the defendant's permission. *See State v. Sturtevant*, 96 N.H. 99, 70 A.2d 909; *Schmerber v. California*, 384 U.S. 757 (1966). Neither does the guarantee of due process. *Schmerber v. California supra*. Due process rather forbids the use of brutal or unreasonable means to require the test or to obtain the sample. *See Rochin v. California*, 342 U.S. 165 (1952); *South Dakota v. Neville*, 459 U.S. at 559 n.9; *Schmerber v. California, supra* at 760 n.4. This case is therefore essentially different from *Griffin v. California*, 380 U.S. 609, *reh'g denied*, 381 U.S. 957 (1965), which held that a court could not penalize the exercise of a defendant's fifth amendment privilege. In the present case the defendant's refusal is not the exercise of any constitutional right or privilege whatsoever.

The defendant's refusal is, rather, the exercise of a legal right provided by the legislature. The legislature has chosen not to insist that the State exercise its constitutional power to demand a sample for testing in every case. It has chosen instead to provide that a defendant "under arrest for any violation or misdemeanor

under RSA 265," who is otherwise subject to the implied consent law, may effectually refuse to provide a sample. RSA 265:92, I (Supp. 1983). Thus a DWI defendant has a legal power to refuse to provide a sample that the State could constitutionally demand, and thereby to suppress probative evidence.

In theory, of course, the legislature could have provided this power with no strings attached, in which case presumably all defendants charged with DWI who believed that they were guilty would refuse to provide a sample for testing. Instead of emasculating the implied consent law, however, the legislature has attached two strings to a refusal. It has provided for the imposition of a civil penalty in the form of revocation of a driver's license or privilege for as long as one year. *Id.* And it has provided that a trial court may allow the use of the defendant's refusal as evidence against him in any civil action or criminal prosecution for acts committed while he was operating under the influence. RSA 265:88-a (Supp. 1983).

The legislature has thus provided a trade-off: a defendant may suppress evidence in the form of a sample that could be analyzed chemically, but in return he will lose his license for a time and his decision to suppress that evidence may itself be considered in determining whether he is guilty or civilly liable. This is not, however, an even trade-off. There is no question that a chemical test provides the most reliably probative evidence of the influence or non-influence of alcohol. *See People v. Sudduth*, 65 Cal. 2d 543, 421 P.2d 401, 55 Cal. Rptr. 393 (1966). Thus, the defendant's option is really to suppress more reliable evidence in favor of less reliable evidence, however damaging the latter may be.

On this analysis, it is not reasonably descriptive to say that the State imposes a choice. What the State imposes, as it may constitutionally do, is a qualified obligation to provide a sample of physical evidence. The State then grants a qualified right to refuse to provide that sample, although it is not constitutionally obligated to grant such a right. That right to refuse is in reality an option to suppress more probative evidence in favor of less probative. Granting that option cannot reasonably be called imposing a choice.

Nor is there any sense in which the act of refusal itself may be called "compelled." First, it is clear that a defendant's testimonial response prompted by the imposition of State power upon him does not, without more, amount to compelled self-incrimination. If it did, the requirements of *Miranda v. Arizona*, 384 U.S. 436 (1966), could not in principle be confined to interrogations, and any statement following State intrusion would be inadmissible unless preceded by the warnings and waiver that *Miranda* requires. *See Berkemer v.*

*McCarty*, 104 S. Ct. 3138, 3148 (1984); *Miranda v. Arizona, supra* at 444; *State v. Rodney Portigue*, 125 N.H. 352, 361, 481 A.2d 534, 540 (1984). *See also* 1 C. TORCIA, WHARTON'S CRIMINAL EVIDENCE § 210, at 440 (13th ed. 1972).

 Second, there is nothing about the characteristics of chemical tests for blood alcohol that can be said to force a defendant to choose the so-called refusal option. The State does not, and could not, employ unreasonable means of physical coercion to induce a defendant's consent or to take the sample against a defendant's will. *See Rochin v. California*, 342 U.S. 165 (1952). As the Supreme Court of the United States pointed out in *Neville*, the procedures for extracting or gathering the samples themselves are either unintrusive or only minimally so, and any discomfort is trivial at the worst. *South Dakota v. Neville*, 459 U.S. at 563. Therefore, a refusal to provide a sample for testing cannot be considered to be compelled in the sense that it is the only reasonable means to avoid a painful or offensive alternative.

Indeed, there is an absence not only of State compulsion to refuse, but of anything that could even be called State inducement to refuse. The inducement provided by the State works in quite the opposite direction, for the civil penalty for refusal is an inducement to submit to the test, not to refuse it. *See People v. Ellis*, 65 Cal. 2d 529, 421 P.2d 393, 55 Cal. Rptr. 385 (1966).

Hence, it is hard to imagine any circumstances more different from those that historically led to the formulation of the guarantees contained in the fifth amendment and article 15:

> "When a suspect was brought before the Court of High Commission or the Star Chamber, he was commanded to answer whatever was asked of him, and subjected to a far-reaching and deeply probing inquiry in an effort to ferret out some unknown and frequently unsuspected crime. He declined to answer on pain of incarceration, banishment, or mutilation. And if he spoke falsely, he was subject to further punishment. Faced with this formidable array of alternatives, his decision to speak was unquestionably coerced."

*Griffin v. California*, 380 U.S. at 620 (Stewart, J., dissenting).

In sum, there is no good reason in general constitutional principle, in the particular facts of the testing procedures or in constitutional history to classify the defendant's refusal as compelled. In so concluding, we join the great majority of State courts that have considered the issue under the State or National Constitutions. *See South*

*Dakota v. Neville,* 459 U.S. 553 (1983); *Newhouse v. Misterly,* 415 F.2d 514 (9th Cir.), *cert. denied,* 397 U.S. 966 (1969); *Welch v. District Court of Vermont Unit, Etc.,* 594 F.2d 903 (2d Cir. 1979); *Hill v. State,* 366 So. 2d 318 (Ala. 1979); *Campbell v. Superior Court,* 106 Ariz. 542, 479 P.2d 685 (1971); *People v. Municipal Court,* 186 Cal. Rptr. 716 (1982); *State v. Durrant,* 55 Del. 510, 188 A.2d 526 (1963); *State v. Bock,* 328 P.2d 1065 (Idaho 1958); *People v. Miller,* 75 Ill. App. 3d 775, 394 N.E.2d 783 (1979); *Alldredge v. State,* 239 Ind. 256, 156 N.E.2d 888 (1959); *State v. Vietor,* 261 N.W.2d 828 (Iowa 1978); *State v. Smith,* 359 So. 2d 157 (La. 1978); *State v. Willis,* 332 N.W.2d 180 (Minn. 1983); *State v. Meints,* 189 Neb. 264, 202 N.W.2d 202 (1972); *People v. Thomas,* 46 N.Y.2d 100, 385 N.E.2d 584, 412 N.Y.S.2d 845 (1978), *appeal dismissed,* 444 U.S. 891 (1979); *State v. Flannery,* 31 N.C. App. 617, 230 S.E.2d 603 (1976); *State v. Stanton,* 215 Ohio St. 2d 215, 239 N.E.2d 92 (1968); *City of Portland v. Stanley,* 631 P.2d 826 (Or. App. 1981), *cert. denied,* 455 U.S. 952 (1982); *Commonwealth v. Dougherty,* 393 A.2d 730 (Pa. Super. 1978); *State v. Miller,* 257 S.C. 213, 185 S.E.2d 359 (1971); *State v. Wall,* 137 Vt. 482, 408 A.2d 632 (1979), *cert. denied* and *appeal dismissed,* 444 U.S. 1060 (1980); *Gardner v. Commonwealth,* 195 Va. 945, 81 S.E.2d 614 (1954); *State v. Albright,* 98 Wis. 2d 663, 298 N.W.2d 196 (1980). *Contra State v. Sullivan,* 199 A.2d 709 (Conn. Cir. 1963); *Gay v. City of Orlando,* 202 So. 2d 896 (Fla. App. 1967), *cert. denied,* 390 U.S. 956 (1968); *Hovious v. Riley,* 403 S.W.2d 17 (Ky. 1966); *State v. Adams,* 162 W. Va. 150, 247 S.E.2d 475 (1978).

■ We therefore hold that the guarantee against compelled self-incrimination provided by article 15 does not preclude the evidentiary use of a DWI defendant's refusal to provide a sample of breath or bodily substance for chemical testing.

*Affirmed.*

BATCHELDER, J., with whom BROCK, J., joined, concurred specially; KING, C.J., and DOUGLAS, J., dissented.

BATCHELDER, J., with whom BROCK, J., joins, concurring specially: I concur in the result reached because I accept the analysis that the defendant is not "compelled" to make a testimonial assertion. I believe, however, that the statute vests broad discretion in the trial court to exclude evidence of the refusal to submit to testing for blood alcohol content on due process grounds.

KING, C.J., and DOUGLAS, J., dissenting: We would reverse the conviction and remand for a new trial, because we find that evidence of the defendant's refusal to take a blood alcohol content

(BAC) test was admitted at trial in violation of her privilege against furnishing evidence against herself protected by part I, article 15 of the New Hampshire Constitution.

The United States Supreme Court has held that admission of evidence of the defendant's refusal to take a BAC test in a criminal case does not violate the defendant's federal privilege against self-incrimination. *See South Dakota v. Neville*, 459 U.S. 553 (1983). As a result of independent analysis of the corresponding privilege against self-incrimination embodied in our State Constitution, *see State v. Ball*, 124 N.H. 226, 231–33, 471 A.2d 347, 350–51 (1983), we disagree with the conclusion of the majority and would hold that the protections afforded in our State Constitution are broader than those recognized in the Federal Constitution.

We begin our analysis by examining the statute governing the defendant's submission or refusal to submit to a BAC test. We then examine the privilege provided by the State Constitution and the protections it seeks to give. We conclude that the extent of compulsion exerted upon the defendant in order to obtain this kind of evidence violates the fundamental principle that the State, not the defendant, must furnish the evidence needed for a conviction.

RSA 265:82 (Supp. 1983) proscribes DWI and driving with a BAC of 10/100 percent or more by weight of alcohol in the blood. Drivers upon the highways of this State are deemed to have consented to the administration of blood, urine or breath tests performed by a variety of chemical and physical processes. RSA 265:84 (Supp. 1983). RSA 265:88-a (Supp. 1983) then declares that the defendant's refusal to take the BAC test, RSA 265:84 (Supp. 1983), is admissible in evidence.

RSA 265:92 (Supp. 1983) provides that any person arrested for a violation or misdemeanor under RSA chapter 265 who refuses the request of a law enforcement officer to submit to a test as provided in RSA 265:84 (Supp. 1983) shall have his license or his non-resident driving privilege revoked. The period of revocation for a first refusal of consent, with no prior DWI convictions, is a mandatory ninety days; and for a second refusal of consent, or for a refusal of consent, with a prior DWI conviction, is a mandatory one year. RSA 265:92, I (Supp. 1983).

Part I, article 15 of the State Constitution provides that "[n]o subject shall be held to answer for any crime, or offense, until the same is fully and plainly, substantially and formally, described to him; *or be compelled to accuse or furnish evidence against himself.*" (Emphasis added.) The corresponding testimonial privilege under the fifth amendment of the United States Constitution is that "[n]o person . . .

shall be compelled in any criminal case to be a *witness* against himself." (Emphasis added.)

The fifth amendment privilege protects only against compelled evidence of a testimonial or communicative nature. *Schmerber v. California*, 384 U.S. 757, 760–65 (1966). The fifth amendment does not protect the accused from being compelled to become the source of real or physical evidence such as a blood test or handwriting exemplar to be used against him. In *State v. Arsenault*, 115 N.H. 109, 112, 336 A.2d 244, 246 (1975) and *State v. Sturtevant*, 96 N.H. 99, 103, 70 A.2d 909, 911–12 (1950) we observed that the State testimonial privilege was similarly limited to testimonial and communicative acts. These opinions, however, addressed only the distinction between testimonial and non-testimonial evidence. Although *Arsenault* and *Sturtevant* find the State constitutional privilege similar to the federal constitutional privilege in this respect, they do not govern as to all aspects of the State constitutional privilege.

The language of the State privilege leaves us with the distinct impression that broader protection is afforded by our State privilege than by the fifth amendment. This court has so held in one case. *See State v. Phinney*, 117 N.H. 145, 146, 370 A.2d 1153, 1153–54 (1977) (State Constitution requires proof of voluntariness of confession beyond a reasonable doubt, not just by a preponderance of the evidence as required by due process and the fifth amendment).

So too, Massachusetts has found that its State constitutional privilege provides broader protection than the federal constitutional privilege provides. In 1784 our State incorporated verbatim the language of the Massachusetts privilege into our constitution. *Compare* N.H. CONST. pt. I, art. 15 *with* MASS. CONST. pt. I, art. 12; *Attorney General v. Colleton*, 387 Mass. 790, 444 N.E.2d 915 (1982). These sections provide that "[n]o subject shall be . . . compelled to accuse [,] or furnish evidence against himself." The Supreme Judicial Court of Massachusetts has observed:

> "[T]he words of art. 12, 'or furnish evidence against himself,' may be presumed to be intended to add something to the significance of the preceding language, '[n]o subject shall be . . . compelled to accuse . . . himself.' [citation omitted]. We have consistently held that art. 12 requires a broader interpretation than that of the Fifth Amendment."

*Colleton, supra* at 796, 444 N.E.2d at 919.

Under our State Constitution, the prohibition against compelled self-accusation equates with compelled testimony. The prohibition against compelled furnishing of evidence may go further to protect

evidence otherwise considered to have been real, not testimonial, in nature. Those matters, however, must be addressed in future cases as this court determines the scope and policy of the State constitutional privilege.

No such problems of real versus testimonial evidence are presented in this case. Contrary to the majority's conclusion, the evidence in this case is clearly testimonial. The police officer's testimony related the simple fact of the defendant's refusal to submit to a BAC test. Although it is not clear from the record, we can only conclude that the defendant's refusal was manifested in the form of some communication, either verbally or by assertive conduct, which expressed the defendant's state of mind at the time to refuse to submit to a test. Unlike *Arsenault*, this refusal was not merely a display of external physical characteristics, but was a communication within the realm of the self-incrimination protection. *Cf. Neville*, 459 U.S. at 562 (Court declined to analyze whether the refusal was or was not testimonial, given its holding that the evidence was not compelled).

We next turn to the central question in this case: whether the evidence was compelled. The *Neville* Court reasoned that the compulsion inherent in the South Dakota scheme—a scheme identical in its effect to that at issue in this case—compelled merely a choice by the defendant. The Court then distinguished different kinds of choices which a defendant could or could not lawfully be required to make. On the one hand, the Court observed that compelling the defendant to take the witness stand against his wishes left the defendant with a "choice" of involuntary self-accusation, perjury or continued refusal to testify (risking contempt). *Neville*, 459 U.S. at 563. These choices, the Court recognized, were constitutionally impermissible, as were alternatives where a defendant must "submit to a test so painful, dangerous, or severe, or so violative of religious beliefs, that almost inevitably a person would prefer 'confession.'" *Id.*

The *Neville* Court then reasoned that:

> "The simple blood-alcohol test is so safe, painless, and commonplace . . . that the State could legitimately compel the suspect, against his will, to accede to the test. Given, then, that the offer of taking a blood-alcohol test is clearly legitimate, the action becomes no *less* legitimate when the State offers a second option of refusing the test, with the attendant penalties for making the choice."

*Id.* at 563 (citations omitted).

The Court's reasoning in *Neville* thus clearly acknowledges a distinction between the admission of evidence of the defendant's refusal

to take a BAC test and the prohibition upon the prosecutor's or the judge's commenting upon the defendant's refusal to testify. *Id.* at 560; *see Griffin v. Illinois,* 380 U.S. 609 (1965); *see also Carter v. Kentucky,* 450 U.S. 288 (1981) (upon defendant's request, judge must instruct the jury to draw no adverse inference from defendant's failure to testify). Under *Neville,* evidence of the defendant's refusal to take a blood test is admissible against him because the compulsion to take the test is permissible. On the other hand, under *Griffin,* evidence offered by the prosecutor of the defendant's refusal to testify is not permitted because the act of the defendant's testimony cannot be compelled.

The fact that the underlying act of submitting to a test may be compelled does not automatically mean that refusal to submit to the test is admissible evidence. *Schmerber* and *Arsenault* did not analyze the extent of compulsion inherent in obtaining the evidence, because the cases concluded that the evidence was not testimonial. Therefore, an examination of the scope of the self-incrimination privilege was not required in those cases. In the case before us, our attention focuses on the degree of compulsion used to produce the defendant's refusal in terms of the scope of the State privilege against self-incrimination.

This court has held that part I, article 15 of the State Constitution grants broader protection than the fifth amendment of the Federal Constitution. *See State v. Phinney,* 117 N.H. at 146, 370 A.2d at 1153–54. Broader protection in the sense of permissible compulsion means that the State may use less coercion to obtain evidence under the State privilege than it may under the federal privilege.

*Attorney General v. Colleton,* 387 Mass. at 793–94, 444 N.E.2d at 917 explains the policy behind the Massachusetts privilege as follows:

> "It reflects many of our fundamental values and most noble aspirations: our unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury or contempt; our preference for an accusatorial rather than an inquisitorial system of criminal justice; our fear that self-incriminating statements will be elicited by inhumane treatment and abuses; our sense of fair play which dictates 'a fair state-individual balance by requiring the government to leave the individual alone until good cause is shown for disturbing him and by requiring the government in its contest with the individual to shoulder the entire load,' . . . our distrust of self-deprecatory statements; and our realization that the privi-

lege, while sometimes 'a shelter to the guilty,' is often 'a protection to the innocent.'" (Citations omitted.)

*See also Jackson v. Denno*, 378 U.S. 368, 386 (1964); *Lego v. Twomey*, 404 U.S. 477, 485 (1972) (under the fifth amendment, admission of an involuntary confession violates the Federal Constitution not because it is inherently untrustworthy, but because it offends the underlying principle that the State must prove guilt by independently and freely secured evidence).

Again, we must disagree with the majority's conclusion that "it is not reasonably descriptive to say that the State imposes a choice." The extent of coercion in the statutory scheme at issue here is considerable. The defendant's refusal to submit is not the product of a free choice. The choice of submitting or refusing to submit has been imposed upon the defendant by the State. The consequences of not submitting to a BAC test are widely known to yield the loss of a driver's license for ninety days or one year depending upon the driver's prior history.

Admission into evidence of the defendant's refusal to take a BAC test, akin to admission of a confession of guilt, has special meaning to a fact-finder, and, for practical purposes, inevitably leads to a conviction. *See State v. Phinney*, 117 N.H. at 147, 370 A.2d at 1154. The defendant's election between two alternatives, both bad from the defendant's perspective, is a compelled choice. The fact that election of only one of the available "choices" produces testimonial evidence, while election of the other yields only physical evidence, does not remove the choice from the protection of the State testimonial privilege. The existence of a "choice" does not lessen the underlying compulsion inherent in the statutory scheme.

Given the special weight which evidence of the defendant's refusal to submit to a BAC test will have with the fact-finder, the defendant will be faced at trial with yet another choice of consequence under the State testimonial privilege—the choice of whether or not to testify. Effectively rebutting evidence of a refusal to take a BAC test, like rebutting a confession, will ususally require the testimony of the defendant. *See State v. Phinney*, 117 N.H. at 147, 370 A.2d at 1154 (1977). This "choice" of whether to testify is really no choice at all, for it goes to the heart of the testimonial privilege itself; that is, protecting the defendant from the "cruel trilemma of self-accusation, perjury or contempt." *Attorney General v. Colleton*, 387 Mass. at 793, 444 N.E.2d at 917.

To the jury, the defendant's silence at trial, even without comment by a prosecutor and even with an instruction from the court, may appear to be part of a continuing cover-up. The defendant's failure

to rebut the evidence of his refusal to submit to a BAC test creates an adverse inference of guilt. Thus, the statutory scheme yields the final "evidence" furnished by the defendant to secure his own conviction. Carried to its logical end result, this previously suspect degree of compulsion to testify becomes constitutionally impermissible.

There may be situations in which the defendant's refusal to submit to a BAC test is relevant for some purpose other than proving intoxication. For example, the refusal may be probative of whether the defendant understood his rights or was competent at the time in question. In such cases, the evidence of the defendant's refusal may be admitted for the limited purpose at issue, provided that the probative value outweighs the prejudicial effect.

Accordingly, we would hold that the State may request that a defendant take a BAC test and may impose appropriate penalties for the defendant's refusal to comply with that request as an incentive to induce compliance. However, under the State privilege against compelled self-accusation and furnishing of evidence, a refusal so elicited cannot be used as evidence of the fact sought to be proved by the results of the requested BAC test. In the case before us, the conviction of the defendant was based on evidence in violation of the privilege. We would therefore reverse the conviction and remand.