Salem District Court
No. 2004-742

THE STATE OF NEW HAMPSHIRE

v.

SUZANNE BARKUS

Argued: September 15, 2005
Opinion Issued: October 31, 2005

*Kelly A. Ayotte,* attorney general (*Peter K. Odom,* assistant attorney general, on the brief and orally), for the State.

*Robert Stein & Associates, PLLC*, of Concord (*Robert A. Stein* on the brief and orally), for the defendant.

DALIANIS, J. The defendant, Suzanne Barkus, appeals her conviction for driving while under the influence of intoxicating liquor. *See* RSA 265:82 (2004). She argues that the Salem District Court (*Korbey*, J.) erred in failing to inform the parties whether it had suppressed the results of a breath test administered following an alleged violation of her *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436 (1966). The defendant contends that if the results were admitted, the trial court improperly relied upon them, and that if they were not, then the evidence was insufficient to convict her. We affirm.

The record supports the following facts. At approximately 3:00 p.m. on April 1, 2004, New Hampshire State Trooper David Kane, while patrolling Interstate 93 (I-93), came upon an automobile parked at an angle on the southbound shoulder of the highway near Exit 1 in Salem. He observed that the driver's side of the vehicle appeared to be covered in mud and vomit.

Trooper Kane found the defendant seated in the driver's seat. She appeared "dazed or confused" and her eyes were glazed over. Trooper Kane noted a strong odor of vomit in the immediate area. He requested that the defendant produce her license and registration, and then asked her what had happened. She replied that she did not know. He then asked her where she was coming from; she replied that she had been skiing at Bretton Woods, Massachusetts, before changing her answer to Bretton Woods, New Hampshire.

Trooper Kane noticed that the defendant's speech was slurred. He asked if she had been drinking, and she replied that she had not. She was then taken to an ambulance that had arrived at the scene. While she was being treated, Trooper Kane examined her vehicle and observed a "clear glass" containing a brown liquid in the driver's cup holder. While retrieving the registration from the car, he smelled the contents of the glass and recognized the smell of Kahlua, a liqueur.

Trooper Kane approached the defendant in the ambulance and asked her a series of questions regarding her physical condition and the contents of the glass. At no time did he provide the defendant with *Miranda* warnings. *See generally id.* He then asked her to submit to a preliminary breath test (PBT). After administering the test, he informed her that she was under arrest for driving while under the influence. Trooper Kane placed the defendant in his cruiser and brought her to the Salem Police Department.

Trooper Kane learned that the breath analysis machine at the Salem Police Department was inoperable. He asked the defendant if she was willing to submit to a breath test. She stated that she was, so he brought her to the Windham Police Department. Upon arrival, Trooper Kane read the defendant an administrative license suspension (ALS) rights form, which she signed. He then performed the breath test, the results of which showed a blood alcohol concentration of 0.16.

The defendant was charged with driving while under the influence of intoxicating liquor under RSA 265:82. Prior to trial, she filed a notice demanding formal proof that I-93 is a "way," a required element of this offense. *See* DIST. CT. R. 1.22 ("[A] party shall notify the opposing party or counsel at least ten days prior to trial if said 'way' or public highway must be formally proved[.]"). The State responded with a motion *in limine* requesting that the trial court take judicial notice that I-93 is a "way" as defined in RSA 259:125 (2004). The defendant objected, asserting that the State was obligated to formally prove that element of the offense at trial and in her presence.

The defendant also filed a pre-trial motion to "suppress and preclude the State from the use and/or comment on evidence seized from the defendant." The motion contended that Trooper Kane's questioning of the defendant at the scene violated her rights under the State and Federal Constitutions. The trial court did not address the motions prior to trial.

At the August 10, 2004 trial, the State conceded the inadmissibility of the PBT results. The defendant argued in support of her motion to suppress, again invoking the State and Federal Constitutions, and the trial court suppressed the inculpatory statements elicited by Trooper Kane while the defendant was in the ambulance. Relying upon that ruling, the defendant then objected to the admission of the breath test taken at the Windham Police Department (the Windham breath test) on the grounds that it constituted "fruit of the poisonous tree." The trial court took the matter under advisement.

After taking the case under advisement, the trial court issued an order on August 12, 2004, finding the defendant guilty. On August 18, 2004, the defendant moved for clarification and/or reconsideration, requesting that the trial court specify whether or not it had suppressed the results of the Windham breath test. She further urged the trial court to reconsider its verdict based upon the State's purported failure to establish that I-93 was a "way" for the purposes of RSA 265:82 (2004).

The trial court heard argument on the motion at the sentencing hearing on September 29, 2004, and denied it. The order explained that the defendant had failed to object at trial to the court's taking of judicial notice that I-93 is a public way. It further noted that the trial court found "on the

basis of all the evidence presented at trial" that the defendant was guilty of driving while under the influence of intoxicating liquor.

On appeal, the defendant argues that the trial court erred in failing to inform the parties, either during or after the trial, whether it had suppressed the results of the Windham breath test. She asserts that if the results were admitted, they constituted inadmissible "fruit of the poisonous tree." But, if the results were suppressed, she contends that there was insufficient evidence to convict her. Finally, the defendant argues that the State failed to formally prove that the alleged offense occurred on a "way" as required by RSA 265:82 and District Court Rule 1.22.

The defendant, citing RSA 491:15 (1997), asserts that the trial court erred in failing, both during and after trial, to "provide findings of fact and law adequate for proper appellate review." Assuming without deciding that RSA 491:15 applies, we disagree.

At trial, neither party submitted a request for findings of fact and rulings of law pursuant to RSA 491:15. *See* RSA 491:15 ("The court or justice . . . shall, if either party requests it, give his decision in writing, stating the facts found and the rulings of law . . . ."). It was not until after the trial court issued its order finding the defendant guilty that she requested an explication of the court's findings in her motion for clarification and/or reconsideration. This request was denied.

■ We will uphold a trial court's decision on a motion for reconsideration absent an unsustainable exercise of discretion. *See Mt. Valley Mall Assocs. v. Municipality of Conway*, 144 N.H. 642, 654 (2000); *see also Smith v. Shephard*, 144 N.H. 262, 264 (1999). We find no unsustainable exercise of discretion in the trial court's denial. Absent a request pursuant to RSA 491:15, a trial court is not required to issue findings of fact and rulings of law. *See Hardy v. State*, 122 N.H. 587, 590 (1982). The trial court's order denying the defendant's motion for clarification and/or reconsideration without further explanation was, therefore, not error. *See Town of Merrimack v. McCray*, 150 N.H. 811, 814 (2004) (trial court's order denying motion for clarification was sufficient because neither party requested findings of fact or rulings of law under RSA 491:15). The defendant's remaining arguments on this issue are without merit and do not warrant further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

Though we find no unsustainable exercise of discretion, we do note that written findings provide a clear basis for appellate review and, as such, are helpful to this court. Nonetheless, because the trial court declined to specifically suppress the results of the Windham breath test and based its

verdict upon "all the evidence presented at trial," we proceed upon the assumption that the results of the breath test were admitted into evidence.

The defendant contends that the statements suppressed by the trial court and the inadmissible PBT results are inextricably tied to the Windham breath test, and, thus, admitting the results of the Windham breath test violated the State and Federal Constitutions. When a defendant invokes the protections of the New Hampshire Constitution, we must first address those claims, relying upon federal law only to aid in our analysis. *State v. Ball*, 124 N.H. 226, 231-33 (1983).

When reviewing a trial court's ruling on a motion to suppress, we accept its factual findings unless they lack support in the record or are clearly erroneous. *State v. Hight*, 146 N.H. 746, 748 (2001). Our review of the trial court's legal conclusions, however, is *de novo. Id.*

The defendant first contends that the results of the Windham breath test should have been suppressed as "fruit of the poisonous tree." We disagree. The "fruit of the poisonous tree" doctrine is one of constitutional application. *See, e.g., Wong Sun v. United States*, 371 U.S. 471 (1963); *State v. Cobb*, 143 N.H. 638, 650 (1999) (The "fruit of the poisonous tree" doctrine requires that evidence derivatively obtained through a violation of Part I, Article 19 of the New Hampshire Constitution be excluded from trial). We note that even if we assume that the PBT results were inadmissible at trial, they were inadmissible only because of a *statutory* violation. Therefore, we decline to consider the results in our "fruit of the poisonous tree" analysis.

The "fruit of the poisonous tree" doctrine was initially developed in the search and seizure context, with the primary illegality being a Fourth Amendment violation. *See Wong Sun*, 371 U.S. at 484-88; *see also Cobb*, 143 N.H. at 649-50 (where the "primary illegality" was a purported violation of Part I, Article 19 of New Hampshire Constitution). The Supreme Court of the United States later suggested that the doctrine could be extended to cases where the "poisonous tree" was a Fifth Amendment violation. *Michigan v. Tucker*, 417 U.S. 433, 446-47 (1974); *but see United States v. Patane*, 124 S. Ct. 2620 (2004). This court, construing Part I, Article 15 of the New Hampshire Constitution, has specifically interpreted the doctrine to apply in the *Miranda* context, holding that certain physical evidentiary fruits derived from a *Miranda* violation are inadmissible at trial. *State v. Gravel*, 135 N.H. 172, 180-84 (1991). The defendant now urges us to apply our holding in *Gravel* to the facts of this case.

In *Gravel*, police elicited information from a defendant in violation of his *Miranda* rights, then used that information to procure a search warrant that ultimately yielded cocaine and related paraphernalia. *Id.* at 174-75.

Reversing the defendant's conviction for possession of cocaine, we concluded that because the search warrant was tainted by the *Miranda* violation, the subsequent search was illegal and all evidence seized thereby was inadmissible at trial. *Id.* at 176.

*Gravel* is inapposite to the case before us. In that case, we were "faced with the inanimate evidentiary products of a *Miranda* violation, *items seized under authority of a search warrant founded on statements obtained without a waiver.*" *Id.* at 182 (emphasis added). Essential to our reasoning in *Gravel* was the fact that no act of free will on the defendant's part intervened between the primary illegality and the subsequent search. *Id.* The stated rationale for our holding was the deterrence of initial unlawful police conduct. *Id.* at 182-83 ("An officer more concerned with the physical fruits of an unlawfully obtained confession than with the confession itself might reasonably decide that the benefits of securing admissible derivative evidence outweighed the loss of the statements.").

█ In this case, the defendant voluntarily consented to the Windham breath test after being advised of her right to refuse under RSA 265:87 (2004). Unlike the appellant in *Gravel*, the defendant here was presented with the option of refusing to provide the physical evidence at issue. *See State v. Cormier*, 127 N.H. 253, 258 (1985) ("[A] defendant may suppress [blood alcohol test] evidence . . . but in return he will lose his license for a time and his decision to suppress that evidence may itself be considered in determining whether he is guilty or civilly liable."). By electing to proceed with the test after being informed of her rights, the defendant engaged in an intervening act of her own free will. Were we to hold that a breath test, otherwise lawfully administered pursuant to RSA 265:87, is inadmissible simply because it follows an earlier *Miranda* violation, we would curtail the ability of the police to perform an important law enforcement function, while doing little to further the intended deterrent effect of *Gravel*. *See Gravel*, 135 N.H. at 182 ("[D]eterrence of police misconduct by ascribing taint to and excluding [a] later confession [is] difficult to justify when the derivative second confession [is] a product of the defendant's own free will."). We therefore decline to apply the *Gravel* "fruit of the poisonous tree" doctrine to the case before us.

The defendant next argues that when she assented to the Windham breath test, "the proverbial cat was out of the proverbial bag" because of her incriminating statements and the PBT results. Believing her guilt to be firmly established, she continued to cooperate with Trooper Kane. She contends that despite the intervening ALS warnings, the results of the Windham breath test were not "sufficiently attenuated from the earlier and inadmissible evidence to be independently considered by the court."

■ We disagree with the defendant's assertion that the earlier, inadmissible evidence precludes independent consideration of the Windham breath test. First, assuming that the PBT was inadmissible (and therefore never proffered by the State), it was inadmissible only because Trooper Kane did not advise the defendant, as required by RSA 265:92-a, that "her failure to take the test or . . . her taking of the test [would] not be construed to prevent or require a subsequent test pursuant to RSA 265:84." *See* RSA 265:92-a, I (2004). However, RSA 265:92-a, I, also states that "nothing contained in this section shall be construed to prevent or require a subsequent test pursuant to RSA 265:84." *Id.*; *see also* RSA 265:84 (2004). The fact that Trooper Kane did not provide the mandated advisory did not preclude the administration of the second test.

■ As to the inadmissible statements, New Hampshire's "implied consent" law, RSA 265:84, states that "[a]ny person who drives a vehicle upon the ways of this state shall be deemed to have given consent to physical tests and examinations for the purpose of determining whether such person is under the influence of intoxicating liquor." RSA 265:84; *see also Saviano v. Director, N.H. Div. of Motor Vehicles*, 151 N.H. 315, 319 (2004). We have, accordingly, held that the act of submitting to a breath test "is voluntary because the very act of driving on New Hampshire's public roads implies consent to take the test." *State v. Jenkins*, 128 N.H. 672, 675 (1986). It is therefore immaterial whether the defendant's decision may have been influenced by the earlier, inadmissible exchanges with Trooper Kane. *See id.* at 674-75 (rejecting a due process challenge brought under Part I, Article 15 of the New Hampshire Constitution alleging that a defendant's decision to submit to a blood-alcohol test was not made "knowingly and intelligently"). By driving her vehicle on the roads of this State, the defendant impliedly assented to the breath test prior to her encounter with Trooper Kane.

■ Moreover, because the protections of Part I, Article 15 of our State Constitution apply only to evidence that is testimonial in character, it is settled law that a driver arrested for driving while under the influence has no constitutional right to refuse to provide a sample for a blood alcohol test. *See Zyla v. Turner, Director*, 134 N.H. 259, 262 (1991); *see also Cormier*, 127 N.H. at 255, 257 (1985) ("The privilege against self-incrimination does not require the State to obtain the defendant's permission. . . . Neither does the guarantee of due process."); *South Dakota v. Neville*, 459 U.S. 553, 554 (1983) ("[A] State [can] force a defendant to submit to a blood-alcohol test without violating the defendant's Fifth Amendment right against self-incrimination."); *Schmerber v. California*, 384 U.S. 757 (1966). The State therefore imposes,

as it is constitutionally permitted to do, a qualified obligation to provide such a sample. *Cormier*, 127 N.H. at 258. Though it also grants a qualified right to *refuse* to provide a sample, it is not constitutionally obligated to do so. *Id.* Thus, even if the defendant consented to take the Windham breath test under the belief that the inadmissible statements already established her guilt, she was not deprived of any protection under our State Constitution.

Because the Federal Constitution affords no greater protection in the context of the defendant's arguments, we reach the same conclusions under the Federal Constitution as we do under the State Constitution. *See State v. LeCouffe*, 152 N.H. 148, 152 (2005); *see also Patane*, 124 S. Ct. at 2629-30; *Schmerber*, 384 U.S. at 760-64. We further note that the defendant does not contest that the statutory prerequisites for the Windham breath test were met. Based upon the foregoing, we find that the trial court did not err as a matter of law in denying the defendant's motion to suppress the Windham breath test. Accordingly, the evidence was sufficient to convict her.

The defendant's final argument is that the State failed to formally establish that the alleged offense occurred on a "way," a required element of the crime, and that her conviction must, therefore, be reversed. *See* RSA 265:82 (2004).

■ The defendant contends that her pre-trial notice pursuant to District Court Rule 1.22 placed an obligation upon the State to formally prove, *in her presence*, that I-93 was a "way" for the purposes of RSA 265:82. We disagree. Nothing in the language of District Court Rule 1.22 gives rise to such an obligation. *See* DIST. CT. R. 1.22. Moreover, there is nothing in the language of the rule that precludes a trial court from taking judicial notice of a fact and thereby satisfying the "formal proof" requirement of the rule. *See id.*

A trial court may take judicial notice of a fact that is not subject to reasonable dispute. N.H. R. EV. 201(a). Such a fact must either be generally known within the jurisdiction of the trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. N.H. R. EV. 201(a)(1), (2). It is mandatory that a court take judicial notice if it is requested by a party and the court is supplied with the necessary information. N.H. R. EV. 201(e).

■ The State responded to the defendant's notice requesting formal proof of "way" with a motion *in limine* requesting that the trial court take judicial notice of I-93 as a "way" as defined in RSA 259:125. In its motion, the State informed the trial court that "Interstate 93 is generally known within the jurisdiction of this court to be such a 'public highway or street'

and is capable of ready determination by simply verifying the same through the records that are maintained by the New Hampshire Department of Transportation." The status of I-93 as a "way" is generally known and not subject to reasonable dispute. Therefore, on the State's proffer, the trial court should have taken mandatory judicial notice that I-93 was a "way" for the purposes of RSA 265:82. Thus, that element of the offense was established.

*Affirmed.*

BRODERICK, C.J., and NADEAU, DUGGAN and GALWAY, JJ., concurred.