Merrimack,
No. 4563.

LOUIS C. WYMAN, *Attorney General*

*v.*

HUGO DEGREGORY.

Argued September 4, 1957.
Decided December 18, 1957.

*Louis C. Wyman,* Attorney General (by brief and orally), *pro se.*

*James C. Cleveland* (by brief and orally), for the defendant.

LAMPRON, J. Laws 1955, *c.* 312, provides for a grant of immunity to a witness summoned by the Attorney General in the course of the investigation of subversive activities as provided in Laws 1953, *c.* 307, as amended by Laws 1955, *c.* 197. It is intended to operate solely in conjunction with such investigation. Its use is therefore dependent on the constitutionality of that investigation. We have decided in *Nelson* v. *Wyman,* 99 N. H. 33, 36, that the Legislature had the power to order an investigation of subversive activities in our state. After the divided opinion of the Supreme Court of the United States in *Pennsylvania* v. *Nelson,* 350 U. S. 497, we held that "if state investigation of subversive activities is to be prohibited, a declaration to that effect must come from higher authority than this court." *Kahn* v. *Wyman,* 100 N. H. 245, 246. A careful examination of the opinions in *Watkins* v. *United States, supra,* and *Sweezy* v. *New Hampshire, supra,* reveals no such prohibition. *Wyman* v. *Uphaus,* 101 N. H. 139. See *dissenting* opinion of Justice *Clark* in the *Sweezy* case, *supra;* The Supreme Court, 1956 Term, 71 Harv. L. Rev. 85, 141-146; McCloskey, Civil Liberties in 1956 Term of the Supreme Court, 43 Va. L. Rev. 803, 816-821. We therefore proceed to consider the constitutionality of said immunity statute. Laws 1955, *c.* 312.

Article 15th, Part I, of the Constitution of New Hampshire provides that "no subject shall . . . be compelled to accuse or furnish evidence against himself" and the Fifth Amendment of the Federal Constitution provides that "no person . . . shall be compelled in any criminal case to be a witness against himself." Both of these provisions are designed to preserve the common-law privilege afforded a witness to refuse to answer any question which would incriminate him "in other words, to give testimony which may possibly expose him to a criminal charge." *Ullmann* v. *United States,* 350 U. S. 422, 431.

These constitutional provisions protect the witness against the danger of criminal prosecution which might arise from enforced disclosures but not against disgrace, infamy or other consequences which might follow from his testimony. *Brown* v. *Walker,* 161 U. S. 591; *Ullmann* v. *United States, supra.* VIII Wig. Ev. (3rd ed.) *s.* 2255, *p.* 327. See *Nelson* v. *Wyman,* 99 N. H. 33, 44; anno.

100 L. Ed. 535, 540. "It follows therefore that if at the time of the claim of privilege, the liability of the witness to be convicted of the offense inquired about has been terminated, because of an acquittal, prior conviction, pardon, or otherwise, the privilege does not exist for such conduct." *Wyman* v. *DeGregory,* 100 N. H. 163, 165; *In re Pillo,* 11 N. J. 8; *Brown* v. *Walker, supra,* 598, 599. In other words these constitutional guaranties against self-incrimination do not give a witness an absolute right to silence. If the danger against which the privilege is intended to protect, namely, criminal prosecution, is removed by a statute so designed, the constitutional privileges against self-incrimination cease to apply and the witness cannot refuse to answer on that ground. *Hale* v. *Henkel,* 201 U. S. 43, 67; *Wyman* v. *DeGregory, supra,* 165. See anno., 118 A. L. R. 602, 619; 53 A. L. R. (2d) 1030.

The purpose of Laws 1955, c. 312, and of similar acts, commonly called immunity statutes, is to take away the criminality of the offense inquired about and thus "remove those sanctions which generate the fear justifying invocation of the privilege." *Ullmann* v. *United States, supra,* 431. Immunity statutes, some of which have existed approximately a century, have constituted an integral and hitherto unquestioned part of our statutory law. RSA 7:27; 15:7; 68:9; 69:28; 149:17; 176:16; 282:9(o); 356:6; 365:16; 402:72; 405:23; 417:16; 589:6; 609:10. While these relate primarily to matters of state concern it is not unlikely that disclosures made thereunder might constitute the basis of a prosecution under federal law or under the law of another state.

The Fifth Amendment of the Federal Constitution does not in itself apply to a state matter such as is involved here and it is our opinion that it has not been made applicable by the Fourteenth Amendment. *Brown* v. *Walker, supra,* 606; *Jack* v. *Kansas,* 199 U. S. 372; *In re Pillo, supra.* See 70 Harv. L. Rev. 1454, 1463. As to the Fifteenth Article of the New Hampshire Constitution, an immunity statute which protects a witness against criminal conviction in our state courts from disclosures which he may be compelled to make satisfies its requirements. "Being no longer liable to prosecution, he is not compelled, by testifying, to accuse or furnish evidence against himself." *State* v. *Nowell,* 58 N. H. 314, 315.

Our Legislature, however, cannot enact a law which can grant to a witness immunity from criminal prosecution in the other 47 states or in the federal courts as a result of forced disclosures

made in a legislative investigation or other proceedings conducted in this state. *Feldman* v. *United States*, 322 U. S. 487; *Dunham* v. *Ottinger*, 243 N. Y. 423. It has been held in one case that the privilege against self-incrimination exonerates from disclosures whenever there is a probability of prosecution in a sister state or in a federal court. *People* v. *DenUyl*, 318 Mich. 645. However, the overwhelming majority of the decided cases has held that full and complete immunity against prosecution by the government compelling the witness to answer is equivalent to the protection furnished by the privilege against compulsory self-incrimination. *United States* v. *Murdock*, 284 U. S. 141, 149; *Feldman* v. *United States, supra; State* v. *Wood*, 99 Vt. 490; *Cabot* v. *Corcoran*, 332 Mass. 44; *State* v. *Morgan*, 164 Ohio St. 529. See anno., 59 A. L. R. 895; 82 A. L. R. 1380; 38 A. L. R. (2d) 257, 267. These holdings are not in violation of the Fourteenth Amendment of the Federal Constitution. *Jack* v. *Kansas, supra; Twining* v. *New Jersey*, 211 U. S. 78, 93. See *Snyder* v. *Massachusetts*, 291 U. S. 97, 105; *Palko* v. *Connecticut*, 302 U. S. 319, 325, 326.

We are in accord with the majority view and so decide. The privilege against self-incrimination with which we are concerned here is granted to the defendant by Article Fifteenth of the Constitution of New Hampshire. This privilege is necessarily limited to prosecutions in the courts of our state. "The boundaries of our Constitution and our sovereignty are coextensive. A constitution is intended to protect the accused against the methods of its own jurisdiction and no other." VIII Wig. Ev. (3rd *ed.*) s. 2258, *p.* 338. Laws 1955 *c.* 312, protects the defendant against criminal convictions in our state courts from disclosures which he may be compelled to make thereunder. This protection is coextensive with the privilege invoked. Our Constitution cannot grant to the defendant a privilege against self-incrimination in a criminal proceeding in any of the other 47 states or in the federal courts. An immunity statute cannot be held invalid because it does no more. *Cabot* v. *Corcoran, supra*.

Laws 1955, *c.* 312, provides that "No witness summoned . . . in the course of the investigation of subversive activities . . . shall be excused from giving his testimony . . . upon the ground that such testimony . . . could tend to incriminate him provided that upon claim of privilege against self-incrimination, on relation of the attorney general, any justice of the superior court had adjudged the testimony of such witness . . . to be necessary in the public

interest confirmed by such justice in a written communication to the witness." The statute further provides that such disclosures shall not be used against the witness, as the subject of or as evidence in a criminal prosecution pertaining thereto.

Defendant argues that this statute is unconstitutional because it violates the doctrine of separation of powers. N. H. Const., Pt. I, *Art.* 37th; U. S. Const., *Arts.* I, II, III. We fail to see how the doctrine of separation of powers under the Federal Constitution is involved if the statute complies with the provisions of our State Constitution in the matter. *Leiter Minerals* v. *United States,* 352 U. S. 220; *Sweezy* v. *New Hampshire, supra,* 255. It is also important to bear in mind in considering this argument the significant differences between the Federal and our State Constitution in their provisions granting power to the respective judiciaries as well as the historical background surrounding their adoptions.

Under Article III, section 2 of the United States Constitution "The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States, and treaties . . . to controversies to which the United States shall be a party . . . . " "The result of the limitation is that the Court's only power is to decide lawsuits between adversary litigants with real interest at stake, and its only method of proceeding is by the conventional judicial, as distinguished from legislative or administrative process. This precludes the rendering of advisory opinions even at the request of the nation's President . . . It also precludes imposition on federal constitutional courts of nonjudicial duties . . . A federal court can perform but one function — that of deciding litigation — and can proceed in no manner except by the judicial process." Jackson, The Supreme Court in the American System of Government, 11, 12; *Muskrat* v. *United States,* 219 U. S. 346, 356; *Chicago & S. Air Lines* v. *Waterman Corp.,* 333 U. S. 103, 113; *McGrath* v. *Kristensen,* 340 U. S. 162. Thus the courts created under the Federal Constitution can act only in "cases" and "controversies" and cannot give advisory opinions.

Nowhere in the law of this state is the function of our courts specifically limited to "cases" and "controversies." Furthermore Part II, Article 74th, of our Constitution provides that "Each branch of the legislature as well as the governor and council shall have authority to require the opinions of the justices of the [supreme court] upon important questions of law and upon solemn occasions." Also as pointed out in *Attorney General* v. *Morin,* 93

N. H. 40, 44, "it is abundantly clear that the men of 1784 [framers of our Constitution] had lived under a judicial system in which the courts were called upon to exercise a wide variety of functions which were chiefly executive, though sometimes legislative in character." An examination of the Revised Statutes Annotated will reveal that similar functions are still in existence of which the following are but a few illustrations. The duty to appoint county auditors, to order special examinations and to fix the number of audits to be made in a year. RSA 25:1, 2, 3. The power to appoint inspectors of elections when not made by a city within the time specified. RSA 59:33. The power to allow a reasonable sum for services performed by a person in bringing to justice an offender charged with a crime. RSA 610:2.

It is also pointed out in the above *Morin* case at page 46, that "with reference to the purpose of Article 37 of the Bill of Rights, it should be remembered that during the Revolution all sorts of executive and many judicial powers had been exercised by the Legislature and this practice had resulted in great dissatisfaction . . . The convention was engaged in setting up new executive and judicial branches of the State Government and it may well have been that the prime purpose of Article 37 in the minds of its framers was to protect these new departments from legislative encroachment rather than to circumscribe within strict limits the functions of the Court."

An examination of the legislative history of said Laws 1955, c. 312, shows that the Attorney General in a report transmitted to the Legislature (Attorney General's Report on Subversive Activities in New Hampshire 1955, *p.* 3) recommended that it enact a law vesting "authority in the Attorney General to grant immunity to a witness when he finds such a grant . . . to be in the public interest." A bill incorporating this proposal was introduced. Under its provisions the grant of immunity was to be made when "the Attorney General has adjudged the testimony of such witness . . . to be necessary in the public interest confirmed by him in a written communication to the witness." This bill was defeated.

Later in the same session said chapter 312 was adopted. It was almost identical in language. Under it however the grant of immunity was to be made when "on relation of the attorney general, any justice of the superior court has adjudged the testimony of such witness . . . to be necessary in the public interest confirmed by such justice in a written communication to the

witness." It seems to us that the Legislature by its recourse to a Justice merely intended to have an impartial person experienced in the matter approve the grant of immunity. When performing this same function which under the proposed bill was to be performed by the Attorney General, the Justice of the Superior Court is not exercising his usual function of deciding litigation between adverse parties in a judicial proceeding. However, in view of the historical background in which our Constitution was framed as well as the fact that it has no specific provision limiting the function of a Justice of the Superior Court to "cases" and "controversies" we are of the opinion that the functions conferred on the "justice of the superior court" by said chapter 312 do not violate our Constitution.

We decided in *Wyman* v. *DeGregory*, 100 N. H. 163, 167, that the Legislature did not intend that a notice and hearing be given to a witness before a grant of immunity was made under said chapter 312. As we have stated above the grant of immunity made thereunder by a Justice of the Superior Court is not made in a judicial proceeding. There is therefore no legal requirement that notice and an opportunity to be heard be given to the defendant before immunity is granted. *DiPietro* v. *Lavigne*, 98 N. H. 294. See *Governor & Council* v. *Morey*, 78 N. H. 125; *State* v. *4.7 Acres of Land*, 95 N. H. 291.

The Trial Court's refusal to rule on the constitutionality of Laws 1955, c. 312, prior to questioning of the defendant was proper. The question presented involved mainly the interpretation of the Constitution of New Hampshire and that question is for the determination of this tribunal. *State* v. *Company*, 84 N. H. 322, 327. This statute not being clearly unconstitutional on its face (*Velishka* v. *Nashua*, 99 N. H. 161, 165) the Trial Court could properly assume its constitutionality until it was decided otherwise in this court. *Nelson* v. *Wyman*, 99 N. H. 33, 50.

Defendant's argument that the sentence of the Trial Court was not properly or constitutionally imposed is not valid. This issue was decided adversely to his contentions in *Wyman* v. *Uphaus*, 100 N. H. 436, 448, and we have not altered the views there expressed.

*Exceptions overruled.*

WHEELER, J., did not sit; DUNCAN, J., dissented; the others concurred.

DUNCAN, J., *dissenting:* The test to determine the validity of an immunity statute designed to prevent recourse to the privilege against self-incrimination is not doubtful. The immunity granted must be coextensive with the privilege to be taken away. *Art.* 15th of the Bill of Rights provides: "No subject shall . . . be compelled to accuse or furnish evidence against himself." This language does not confine the privilege to the withholding of evidence which may be used in prosecution by this state alone. It extends to any evidence which may be used to incriminate, regardless of where, how, or by what authority it may be used. It follows that in order to be valid the statute under consideration (Laws 1955, c. 312) must afford immunity which is equally broad.

In *State* v. *Nowell,* 58 N. H. 314, testimony was sought to be compelled with respect to the sale of intoxicating liquors by the witness or his employer. There was no reason to anticipate incrimination under the laws of any other jurisdiction, and the possibility received no express consideration in the opinion. Reliance upon the privilege guaranteed by Article 15th was held to be precluded by reason of an immunity statute considered to afford the witness "legal protection . . . equivalent to his legal innocence." *Pp.* 315, 316. In reaching this conclusion the court laid down the test that the statute "must relieve him from all liability on account of the matters which he is compelled to disclose; otherwise, the statute would be ineffectual." *Ib.,* 315.

In *Counselman* v. *Hitchcock,* 142 U. S. 547, 586, a federal immunity statute was held invalid, because it failed to meet the standard there laid down: "In view of the constitutional provision, a statutory enactment, to be valid, must afford absolute immunity against future prosecution for the offence to which the question relates . . . the exonerating statute must be so broad as to give the witness complete amnesty. . . . "

In *Brown* v. *Walker,* 161 U. S. 591, a similar test was applied, and a later federal statute held valid because "applicable whenever and in whatever court such prosecution may be had." *P.* 608. After quoting from *State* v. *Nowell, supra,* and other cases, the court observed that the "cases will all be found to be based upon the idea that, if the testimony sought cannot possibly be used as a basis for, or in aid of, a criminal prosecution against the witness, the rule [that a witness is privileged not to answer] ceases to apply. . . . " *P.* 597.

The federal statute before the court in the recent case of *Ullmann*

v. *United States,* 350 U. S. 422, was held to prohibit prosecution by any state by reason of matters disclosed by the witness' testimony and was accordingly upheld, as one which afforded him complete immunity. See also, *Adams* v. *Maryland,* 347 U. S. 179.

The situation disclosed by the present case can hardly be said to meet the requirements laid down by these cases. Admittedly the statute of this state will and can furnish this witness with no immunity against use of his testimony by the federal government or by any other state. Nor does it, like the more realistic Illinois statute, require denial of immunity where the testimony would subject the witness to prosecution elsewhere. *People* v. *Burkert,* 7 Ill. (2d) 506, 513, 514. The witness has pleaded his constitutional privilege not to answer, among other questions, the question of whether he is a member of the Communist party. The report of the Attorney General to the 1955 Legislature discloses that the witness, until recently a resident of Massachusetts, now resides close by that jurisdiction, and that his activities have been under investigation by agencies both of that Commonwealth and of the United States. Attorney General's Report on Subversive Activities in New Hampshire, (1955) 204-206.

Under these circumstances, a holding that since the witness is protected by the statute against use of his testimony in the courts of this state, it follows that he is therefore not "compelled to accuse or furnish evidence against himself" in violation of the Constitution, and that his testimony therefore "cannot possibly be used as a basis for, or in aid of, a criminal prosecution" against him (*Brown* v. *Walker, supra*), is as the Supreme Court of Michigan pointed out in *People* v. *DenUyl,* 318 Mich. 645, 651, a "travesty on verity." See also, *Commonwealth* v. *Rhine,* (Ky. App.) 303 S. W. (2d) 301; *United States* v. *DiCarlo,* 102 F. Supp. 597; *Marcello* v. *United States,* 196 F. (2d) 437, 444; *State* v. *Kelly,* (Fla.) 71 So. (2d) 887; *Hart, J., dissenting, State* v. *Morgan,* 164 Ohio St. 529, 556; Rogge, Compelling the Testimony of Political Deviants, 55 Mich. L. Rev. 163, 197, 200; note 66 Harv. L. Rev. 186.

The conclusion is irresistible that, far from being secured against all liability to future prosecution, this witness is on the contrary under grave risk of such prosecution at the hands of the United States or of the Commonwealth of Massachusetts. To my mind application of the so-called "majority rule" in the circumstances of this case approaches subterfuge, by recognizing fiction as reality.

*People* v. *DenUyl, supra.* It seems to me to expose the witness to the very danger which our Constitution guarantees that he shall not be required to face. I therefore dissent.

If this were not sufficient reason for differing from the view of the court in this case, I should be compelled to dissent on the further ground that the statute violates the provisions of the Constitution requiring separation of the powers of the several branches of the government. Const., Pt. I, *Art.* 37th. Unlike the statute considered in *Ullmann* v. *United States,* 350 U. S. 422, *supra,* our statute (Laws 1955, *c.* 312) clearly places the duty of adjudging whether a grant of immunity is "necessary . . . in the public interest" squarely upon the judiciary, rather than upon the executive branch, in the person of the Attorney General, where it belongs. Instead of contemplating that the court should have no "discretion to deny the order on the ground that public interest does not warrant it" (*Ullmann* v. *United States, supra,* 432) our statute contemplates that the order shall not issue unless the court "has adjudged" that the public interest does require it. Laws 1955, *c.* 312; *Wyman* v. *DeGregory,* 100 N. H. 163, 167.

This in my judgment purports to impose upon the courts a nonjudicial function: the determination of an issue of executive policy, of whether amnesty should be granted in the light of information peculiarly within the knowledge of the governmental branch charged with enforcement of the laws. *Opinion of the Justices,* 85 N. H. 562, 567-569. See Rogge, Federal Immunity Act, 45 Cal. L. Rev. 109, 126. This issue is political (see Dixon, Immunity and Separation of Powers, 23 Geo. Wash. L. Rev. 501, 627, 656) ; and not one of justiciable rights in adversary proceedings. *Petition of Turner,* 97 N. H. 449, 450. See *Attorney General* v. *Morin,* 93 N. H. 40, 50-53. In this connection it is significant that none of the numerous other immunity provisions found in our statutes (*cf.* RSA 356:6; 609:10) provides for judicial intervention, but that all are self-executing, being called into play merely by the decision of the interested representative of the executive branch that the incriminating inquiry shall be made. See Sixth Report, N. H. Judicial Council (1956) *p.* 51.

The duty which Laws 1955, *c.* 312, imposes upon the courts is hardly to be classed with supervision of the financial affairs of counties. *Attorney General* v. *Morin, supra,* 49. Any analogy to issuance of a search warrant is at best superficial (see Taylor, Grand Inquest, 298; 22 U. Chi. L. Rev. 657, 667-669) and furnishes

182

no precedent for imposing upon the judiciary, in contravention of the Constitution, duties which are concededly administrative in character.

If by any stretch of the imagination the issue for the court can be thought to be a judicial one, then the witness has been deprived of due process of law (*Mullane* v. *Central Hanover Tr. Co.*, 339 U. S. 306, 314) because the statute has been held to entitle him neither to notice nor to a right to be heard on the issue of whether immunity shall be granted; and he has had neither. *Wyman* v. *DeGregory*, 100 N. H. 163, *supra*. I would sustain the exceptions.