Hillsborough-southern judicial district
No. 2011-297

## STATE OF NEW HAMPSHIRE

v.

## GARY E. MARCHAND

Argued: April 5, 2012
Opinion Issued: July 31, 2012
Opinion Modified: August 2, 2012

*Michael A. Delaney*, attorney general (*Thomas E. Bocian*, assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

28

HICKS, J. This is an appeal from an order of the Superior Court (*Nicolosi*, J.) denying the State's request to compel the defendant, Gary E. Marchand, to undergo a psychological evaluation by the State's expert. This case presents us with two questions: (1) does the right against self-incrimination prevent the State from compelling a defendant to undergo a psychological or psychiatric examination when he raises an insanity defense; and (2) if such examinations may be compelled, what procedures should trial courts use when ordering them? We answer the first question in the negative, and provide a procedural framework for courts to follow. Accordingly, we reverse in part, vacate in part, and remand.

Our analysis begins with a recitation of the relevant facts, which are not in dispute. The defendant was indicted on one count of first degree murder, *see* RSA 630:1-a, I(a) (2007), and an alternative count of second degree murder, *see* RSA 630:1-b, I(b) (2007), in connection with the alleged homicide of his wife. In March 2010, he filed a notice with the superior court stating that he would raise an insanity defense. Several months later, the defendant notified the State that he plans to present the testimony of five treating physicians to establish this defense. Those physicians provided him with psychiatric treatment prior to the alleged homicide. None of them has discussed the homicide with the defendant, nor has any of them met with the defendant since the homicide. Thus, they will testify only as to the defendant's mental health during the period of time leading up to the homicide. The defendant does not intend to introduce any expert testimony developed from an evaluation conducted after the homicide.

The State moved to compel the defendant to submit to a psychological examination by the State's expert, Dr. Albert Drukteinis. After a hearing, the Superior Court (*Lynn*, C.J.) requested additional briefing.

In their briefs, both parties focus heavily upon *State v. Briand*, 130 N.H. 650, 657 (1988), in which we held "that a criminal defendant waives her right to resist the State's request that she submit to court-ordered psychiatric examination when she (1) submits to psychiatric examination by defense experts; and (2) evinces the intention to rely on that testimony at trial." The defendant argues that *Briand* is not controlling because the defendant in *Briand* sought to introduce expert testimony based upon a post-arrest evaluation, *id.* at 651, whereas the defendant here expects to introduce expert testimony based only upon evaluations that took place prior to the alleged crime. The defendant concedes that, under *Briand*, "when a defendant decides to introduce testimonial statements, namely, his account of relevant facts indirectly through an expert witness, [it] is treated as a waiver of his privilege against self-incrimination, obligating the accused to provide the State with the same access to the accused that he has given his own expert." However, the defendant argues that he made no testimonial

statements to his treating physicians (and thus they will not indirectly convey such statements) because his statements to them did not involve the alleged homicide and were not made in preparation for trial. The defendant accordingly argues that he has not waived his right against self-incrimination by notifying the State that he expects to call his treating physicians to testify and thus cannot be compelled to submit to an examination by the State's expert.

The State disagrees, arguing that *Briand* did not "depend[] upon whether the psychiatric evaluation that was the subject of the [defendant's] proposed expert testimony took place before or after the crime occurred." Rather, according to the State, "*Briand* rested upon the fact that such expert psychiatric testimony is, of necessity, based upon a personal interview with the defendant, thus allowing the defendant to introduce his account of relevant facts indirectly through an expert witness." (Quotations omitted.) For this and other reasons, the State argued that the defendant should be compelled to submit to examination by the State's expert and that such would not violate his right against self-incrimination.

On March 29, 2011, the Superior Court (*Nicolosi*, J.) issued an order addressing the parties' arguments. Pursuant to RSA 135:17 (Supp. 2011), the court may order a psychological or psychiatric examination when a defendant raises an insanity defense, and, as briefly discussed above, *Briand* provides some guidance in this area. The court, however, concluded that this case is factually distinguishable from *Briand* because the defendant here did not provide a statement to his experts after the alleged homicide. The court further observed that *Briand* does not resolve the issue in this case because the defendant in *Briand* raised "a 'battered woman' defense that was framed as one of self-defense and/or provocation manslaughter," and not an insanity defense.

Presented with an apparently novel question, the court examined various cases addressing whether the right against self-incrimination is violated if a defendant is compelled to undergo a psychological or psychiatric examination by the State in circumstances similar to this case. The court ultimately concluded that "[n]one of the cases resolve the issue in the same factual context of the case at bar — that is, a circumstance where the defense has not opted to have its own expert evaluate the defendant after he has been accused of a criminal act — nor has the court found any case on point."

With no guiding case law, the court looked to the potential consequences of a ruling compelling the defendant to undergo an examination:

> Should the State be able to produce expert evidence on sanity based on the defendant's compelled statements, the State would have an advantage in front of the jury that the defendant does not.

> In order to maintain his right against self-incrimination by resisting a forced disclosure about the alleged criminal event with the government's expert, the defendant would have to forgo introducing critical evidence that existed prior to the alleged crime. The inevitable result of the ruling the State seeks would be to force the defendant to assist the government to hold him criminally accountable when the defendant has not voluntarily waived his rights against self-incrimination.

It concluded that the "New Hampshire and federal constitutions should not tolerate placing the defendant in this untenable position."

Consequently, the court set out a detailed procedure for trial. The court ruled that "the State's expert shall have full access to any information considered by the defendant's treating physicians and to the defendant's complete medical and mental health records pre-dating the killing of [his wife]." The State's expert will also "be allowed to conduct or have conducted any psychological testing that does not require a clinical interview or a narrative from the defendant about his thoughts or events leading [up] to and during the killing that his own experts would not have been privy to." It further ordered the State's expert to prepare a written report "outlining the opinion(s) he may offer and the basis for any opinion." The court ruled that if the trial is bifurcated, the report would be available to both parties only "[u]pon conclusion of the guilt phase" so as to prevent the State from benefiting from any derivative evidence contained therein. However, the parties would be provided with the expert's ultimate conclusion prior to trial. Finally, the court ruled that "[s]hould the defendant testify at trial or during the insanity phase, thereby waiving his privilege against self-incrimination as to the offense, the trial shall be suspended for a two-day period in order for [the State's expert] to complete his examination, including completing a clinical interview of the defendant on the offense." This appeal followed.

We start by agreeing with the trial court that *Briand* does not answer the question with which we are presented today. Moreover, we note that *Briand* does not resolve even the threshold question of whether the right against self-incrimination would be violated by ordering an examination in this context.

In *Briand* we stated, "[t]here is no question that part I, article 15 of the New Hampshire Constitution protects statements a defendant may make to a court-appointed psychiatrist," *Briand*, 130 N.H. at 654, and that "[w]hether the defendant pleads insanity or relies on some other defense based on psychiatric testimony, that testimony ultimately goes to the guilt or innocence of the defendant," *id.* Both statements suggest that a

defendant's right against self-incrimination is implicated in the context of an insanity defense. Even so, in *Briand* we explicitly noted that "[the defendant] ha[d] not pleaded insanity," *id.* at 651, and that she intended to use her expert "to support a potential self-defense plea or to prove provocation," *id.* at 652. This fact is not insignificant. With regard to provocation and self-defense, the State bears the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense or was not adequately provoked. *See State v. Etienne*, 163 N.H. 57, 80-81 (2011) (self-defense); *State v. Soto*, 162 N.H. 708, 715-16 (2011) (provocation). Thus, these two defenses constitute elements of the crime for which the State bears the burden of proof. *See Etienne*, 163 N.H. at 80-81; *Soto*, 162 N.H. at 715-16.

■ The defense of insanity, however, is an affirmative defense, *see State v. Labranche*, 156 N.H. 740, 742 (2008), and, pursuant to RSA 628:2 (2007), the defendant has the burden of proving insanity by clear and convincing evidence. Thus, unlike *Briand*, here we are faced with the prospect of the defendant being forced to provide information to the State's expert that would be used not to carry the State's burden, but rather to rebut a claim that the defendant bears the burden of proving. Accordingly, we turn to the threshold issue of whether the privilege against self-incrimination would be violated in the context of a court-ordered psychological or psychiatric evaluation done for purposes of rebutting an insanity defense.

■ Part I, Article 15 of the New Hampshire Constitution provides: "No subject shall . . . be compelled to accuse or furnish evidence against himself." Similarly, the Fifth Amendment to the United States Constitution provides: "No person . . . shall be compelled in any criminal case to be a witness against himself." In certain instances, we have determined that Part I, Article 15 provides greater protection to a defendant than does the Fifth Amendment. *See, e.g., State v. Roache*, 148 N.H. 45, 48-53 (2002). Nonetheless, the privilege contained in the State Constitution is comparable in scope to the privilege in the Federal Constitution. *State v. Burgess*, 156 N.H. 746, 752 (2008).

The defendant argues that a compelled interview under the circumstances of this case would violate his privilege against self-incrimination under both the State and Federal Constitutions. We first address the defendant's claim under the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1983), and cite federal opinions for guidance only. *Id.* at 232-33.

■ Typically, two basic questions are raised by a self-incrimination objection: "[D]oes the evidence in question fall within the scope of evidence to which the [privilege] applies, and did the action of the State in obtaining

that evidence constitute compulsion." *State v. Cormier*, 127 N.H. 253, 255 (1985). Here, both questions are arguably answered in the affirmative. First, the privilege applies only to testimonial statements, *id.* at 256, and we have stated that "statements a defendant may make to a court-appointed psychiatrist . . . are *clearly testimonial*," *Briand*, 130 N.H. at 654 (emphasis added). Second, though the defendant would not strictly be compelled to submit to an evaluation because he could chose to forgo his insanity defense to avoid the examination, the nature of that choice arguably renders the examination compulsory. *Cf. Burgess*, 156 N.H. at 757 (agreeing with other courts that "allowing a court to draw an adverse inference from a defendant's silence at sentencing when he has maintained his innocence throughout the proceedings would force upon the defendant the Hobson's choice . . . which is condemned by the Fifth Amendment[;] . . . specifically, that the defendant must either incriminate himself at the sentencing hearing and show remorse (with respect to a crime he claims he did not commit) or, in the alternative, stand on his right to remain silent and suffer the imposition of a greater sentence" (quotation omitted)).

■ This, however, does not end our inquiry. "By definition, self-incrimination contemplates the use of [the defendant's statements] to aid in establishing the guilt of the defendant." *Lewis v. Thulemeyer*, 538 P.2d 441, 443 (Colo. 1975); *cf. Chavez v. Martinez*, 538 U.S. 760, 767 (2003) ("[The defendant] was never made to be a 'witness' against himself in violation of the Fifth Amendment's Self-Incrimination Clause because his statements were never admitted as testimony against him in a criminal case."). Indeed, as we have previously noted, "[h]istorically [the privilege against self-incrimination] originated as a reaction to the practice in the early English courts of compelling a witness to be sworn and give testimony concerning his guilt." *State v. Arsenault*, 115 N.H. 109, 112 (1975); *accord Doe v. United States*, 487 U.S. 201, 212 (1988) ("Historically, the privilege was intended to prevent the use of legal compulsion to extract from the accused a sworn communication of facts which would incriminate him."); *Parkin v. State*, 238 So. 2d 817, 820 (Fla. 1970) ("The constitutional privilege against self-incrimination in history and principle seems to relate to protecting the accused from the process of extracting from his own lips against his will an admission of guilt."). Thus, we must look to the purpose for which the fruits of the proposed examination would be used.

■ In New Hampshire, the defendant must prove insanity by clear and convincing evidence. RSA 628:2, II. It is no longer the State's burden to prove that the defendant was sane when he committed the crime. *See Novosel v. Helgemoe*, 118 N.H. 115, 125-27 (1978) (reversing case law holding that insanity is an element of the crime, and holding that insanity

is an affirmative defense that the defendant must prove by a preponderance of the evidence), *superseded by statute as stated in State v. Blair*, 143 N.H. 669, 673-74 (1999) (upholding constitutionality of statute requiring defendant to prove insanity by clear and convincing evidence). Thus, the State's proposed examination would be used only to rebut the defendant's claim of insanity — that is, to counter the defendant's claim that he was "not criminally responsible for his conduct." RSA 628:2, I. As other courts have recognized, "[t]he purpose is not to prove by evidence wrested from a defendant whether he is guilty as charged but, rather, to prove whether a defendant possesses the requisite mentality to be guilty as charged, assuming that his guilt is otherwise established, or whether, legally, he cannot be held criminally responsible, irrespective of what other proof may establish he has done." *United States v. Albright*, 388 F.2d 719, 723 (4th Cir. 1968); *see also Parkin*, 238 So. 2d at 820-22. This distinction is significant, for "the existence or nonexistence of legal insanity bears no necessary relationship to the existence or nonexistence of the required mental elements of the crime," and "insanity and criminal intent are distinct aspects of a criminal trial between which the jury is capable of distinguishing." *State v. Baker*, 120 N.H. 773, 777 (1980) (quotation omitted). In sum, evidence rebutting an insanity defense does *not* concern an element of the crime and, thus, does not directly concern guilt.

▇ Accordingly, we now join other courts in holding that the privilege against self-incrimination would not be violated by compelling an examination in a case such as this because the proposed examination would not be used by the State to prove an element of the charged crime or to prove the guilt of the defendant, but rather would be used for the limited purpose of rebutting an issue which the defendant has interjected into the proceeding and upon which the defendant bears the burden of proof. *See, e.g., United States v. Bohle*, 445 F.2d 54, 66-67 (7th Cir. 1971) ("Such an examination does not violate the Fifth Amendment privilege, because its sole purpose is to enable an expert to form an opinion as to defendant's mental capacity to form a criminal intent. It is not intended to aid in the establishment of facts showing that defendant committed certain acts constituting a crime. It cannot be so used, for it is impermissible to introduce into evidence on the issue of guilt any statement made by the defendant during the course of such an examination."), *overruled on other grounds by United States v. Lawson*, 653 F.2d 299, 303 n.12 (7th Cir. 1981); *Albright*, 388 F.2d at 725 ("[T]he purpose of the examination is not to determine whether a defendant did or did not do the criminal acts charged, but whether he possessed the requisite mental capacity to be criminally responsible therefor, if other proof establishes that he did do them. So limited, we find nothing in the

examination . . . to violate a defendant's privilege against self-incrimination."); *Parkin,* 238 So. 2d at 821 ("Self-incrimination is not directly an issue [when a defendant raising an insanity defense is compelled to undergo an examination by a state expert], simply because the question to be resolved is not guilt or innocence, but the presence or absence of mental illness."); *see also United States v. Davis,* 93 F.3d 1286, 1295 n.8 (6th Cir. 1996) ("The defendant who claims insanity interjects a new issue into the proceedings on which he or she bears the burden of proof. The privilege is not violated by an examination, because the examination does not concern an element of the crime." (citation omitted)); *Thulemeyer,* 538 P.2d at 443-44 ("We conclude [that permitting] the admission in evidence of defendant's [compelled] statements to [a court-appointed] psychiatrist where Sanity is the issue, but barring them on the Guilt issue, does not violate the defendant's rights against self-incrimination.").

The Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances. *See Albright,* 388 F.2d at 725 (holding that a compelled examination of a defendant raising an insanity defense does not violate the defendant's Fifth Amendment right against self-incrimination so long as evidence derived from the examination is admitted only on the issue of insanity). Accordingly, requiring the defendant to undergo an examination by the State's expert would not violate his right against self-incrimination under either the State or Federal Constitution and, thus, we reverse the trial court's ruling on this issue.

■ ■ Nevertheless, we recognize that the critical line separating the issues of guilt and insanity must be assiduously guarded to ensure that the defendant's right against self-incrimination is not violated when he raises an insanity defense and is compelled to submit to an examination by the State's expert. We accordingly exercise our supervisory authority over New Hampshire trial courts, *see* N.H. CONST. pt. II, art. 73-a, and set forth a detailed framework for courts to follow.

■ When a defendant raises an insanity defense, pursuant to RSA 135:17, a trial court may order an examination of the defendant by the State's expert. However, the results of the examination may be used *only* to rebut the defendant's insanity claim. *See State v. Martin,* 950 S.W.2d 20, 23-25 (Tenn. 1997) (outlining safeguards for ensuring that a defendant's right against self-incrimination is not violated when he pleads insanity and is subsequently required to undergo a court-ordered psychiatric examination); *see also Gibson v. Zahradnick,* 581 F.2d 75, 78 (4th Cir. 1978); *Albright* 388 F.2d at 725; *Davis,* 93 F.3d at 1295 n.8. Only the expert's ultimate conclusion should be provided to the prosecution and defense prior

to trial. Any other information derived from or related to the examination may be shared with the prosecution only at the point in the trial when such information is necessary for the prosecution to prepare for its rebuttal to the defendant's insanity claim. Courts should err on the side of caution and delay release of such information for as long as reasonably possible. In no circumstances may the prosecution use *anything* from the examination to prove an element of the crime, absent an affirmative use by the defendant of his or her expert testimony to refute the elements. *See Martin*, 950 S.W.2d at 23-25; *see also Davis*, 93 F.3d at 1295 n.8; *Zahradnick*, 581 F.2d at 78. We stress that trial courts must diligently ensure that these procedures are followed when an examination is ordered, for if such examinations are used to "buttress [a defendant's] guilt, the self-incrimination question would generate grave concerns," *United States v. Whitlock*, 663 F.2d 1094, 1107 (D.C. Cir. 1980), and the potential for constitutional error.

Thus, the trial court has discretion to order an examination, RSA 135:17, and the right against self-incrimination has no bearing on whether or not it decides to do so. Rather, in making its determination, the court should look to relevant prudential concerns. To this end, the court should bear in mind that it has the responsibility to structure trials in a manner that both "promote[s] the ascertainment of truth and . . . insure[s] the orderliness of judicial proceedings." *Briand*, 130 N.H. at 652-53. Accordingly, we reverse the court's order with respect to the constitutional issue, vacate the remainder of the order, and remand for further proceedings consistent with this opinion.

> *Reversed in part; vacated in part; and remanded.*

DALIANIS, C.J., and CONBOY, JJ., concurred.