NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2017-0409

THE STATE OF NEW HAMPSHIRE

v.

DAVID BURRIS

Argued:  January 25, 2018
Opinion Issued:  June 5, 2018

Gordon J. MacDonald, attorney general (Sean R. Locke, assistant attorney general, on the brief and orally), for the State.

Nolan | Perroni, P.C., of North Chelmsford, Massachusetts (Peter J. Perroni on the brief and orally), for the defendant.

LYNN, C.J.  The defendant, David Burris, has been indicted on three counts of felony reckless conduct.  See RSA 631:3 (2016).  The Superior Court (Delker, J.) denied the defendant's motion to dismiss the charges but approved this interlocutory appeal from ruling.  Sup. Ct. R. 8.  Because we conclude that the defendant is not entitled to transactional immunity under Part I, Article 15 of the New Hampshire Constitution, we affirm and remand.

The facts as presented in the interlocutory appeal statement are as follows.  At the time of the events giving rise to the indictment, the defendant was employed as a probation and parole officer with the New Hampshire

Department of Corrections (Department).  The indictment alleges that on December 1, 2015, the defendant engaged in reckless conduct when, during a home visit to a probationer he was supervising, he discharged a firearm three times at a motor vehicle operated by the probationer.

The Department investigated the incident.  According to the defendant, as part of that investigation he was ordered, on at least two occasions, "under threat of immediate termination to provide a written statement regarding the events [that later gave] rise to the indictment."  Before providing a written statement, and again prior to submitting to an interrogation by the director of the Department, the defendant made the following assertion:

> I have been ordered by the NH Department of Corrections to participate in this interview/meeting and/or to provide this statement.  I do so at this order as a condition of my employment.  Failure for me to abide by this order would lead to immediate severe discipline in the form of automatic dismissal and/or job forfeiture.  As such, I have no alternative but to abide by this order.  It is my belief and understanding that the Chief and the Department requires [sic] my participation solely and exclusively for internal purposes and will not release it [sic] to any other agency.  It is my further belief that any statements will not and cannot be used against me in any subsequent criminal proceedings.  I authorize release of any statements to my attorney or designated union representative.  I retain the right to amend or change this statement upon reflection to correct any unintended mistake without subjecting myself to a charge of untruthfulness.  For any and all other purposes, I hereby reserve my constitutional right to remain silent under the Fifth and Fourteenth Amendments to the United States Constitution and Part 1, Article 15 of the New Hampshire Constitution and any other rights prescribed by law.  I specifically rely on the [principles] and protections afforded to me by State v. Norwell [sic], 58 N.H. 314 (1878).  Further, I rely upon the protection afforded me under the doctrines set forth in Garrity v. New Jersey, 385 U.S. 493 (1967); Spevack v. Klein, 385 U.S. [511] [1967]; State v. Litvin, 147 NH 606 (2002) and any other rights afforded under New Hampshire law and/or the New Hampshire Constitution, should this report/statement be used for any other purpose of whatsoever kind or description.

The defendant then provided a compelled statement regarding the events of December 1, 2015.  The director subsequently issued an investigative report to the commissioner of the Department that quoted and directly relied upon both the defendant's written statement and his interview.[1]

---

[1] A copy of the defendant's written statement was included in the report.

The State avers that the prosecuting entity in this case, the Strafford County Attorney's Office, "was provided with a redacted version of the [investigative report] and other materials from [the] New Hampshire Department of Corrections, that did not reference or include [the defendant's] statement or the fruits therefrom." For purposes of this interlocutory appeal, the defendant accepts the State's representations regarding the materials to which the Strafford County Attorney's Office has had access. In October 2016, the defendant was indicted on three counts of felony reckless conduct.

The defendant moved to dismiss the indictment, arguing that he is entitled to transactional immunity under Part I, Article 15 of the New Hampshire Constitution. He asserted that the State Constitution provides broader protection against self-incrimination than the Fifth Amendment to the United States Constitution and that, pursuant to State v. Nowell, 58 N.H. 314 (1878), only transactional immunity is sufficient to protect the privilege against self-incrimination provided by the State Constitution. The trial court denied the defendant's motion.

The question transferred for our review is: "Whether Article 15 of the New Hampshire Constitution, as construed by [this court] in State v. Nowell, 58 N.H. 314 (1878), requires a public employee be given transactional immunity when he is compelled to furnish statements against himself by his public employer?" The protection afforded by Part I, Article 15 in this context is strictly a question of law, and thus our review of the trial court's ruling is de novo. State v. Roache, 148 N.H. 45, 46-47 (2002); see Petition of State of N.H. (State v. Johanson), 156 N.H. 148, 151 (2007).

Part I, Article 15 of the State Constitution provides in part that "[n]o subject shall be . . . compelled to accuse or furnish evidence against himself." N.H. CONST. pt. I, art. 15. This privilege against self-incrimination permits an individual "to refuse to testify against himself at a criminal trial in which he is a defendant, [and] also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." Knowles v. Warden, N.H. State Prison, 140 N.H. 387, 391 (1995) (quotation omitted). The purpose of the right is to prevent the compulsion and subsequent use of the defendant's testimony to establish his guilt in a criminal case. See State v. Marchand, 164 N.H. 26, 32 (2012).

The defendant argues that Part I, Article 15 "requires that a public employee be afforded transactional immunity to displace the right to be free from providing compelled statements against one's self," and that "[b]ecause full transactional immunity . . . is the price the State must pay for compelling his testimony, the indictment[s] must be dismissed." The defendant further contends that the trial court erroneously determined that the holding in Nowell is dicta. In addition, he asserts that even if we determine that transactional

3

immunity is not necessary to displace his right to remain silent, he was entitled to rely upon this court's longstanding precedent.

There are generally two types of immunity that prosecutorial authorities offer in exchange for compelled testimony. "Transactional immunity," the broadest form of immunity, affords "immunity from prosecution for offenses to which compelled testimony relates." Kastigar v. United States, 406 U.S. 441, 443 (1972). "Use and derivative use immunity" affords "immunity from the use of compelled testimony and evidence derived therefrom." Id. Unlike transactional immunity, a grant of use and derivative use immunity does not prevent future prosecution. See id. at 452-53. Both types of immunity are typically creatures of statute. See id. at 442-43 (constitutional challenge to a federal immunity statute conferring use and derivative use immunity); Counselman v. Hitchcock, 142 U.S. 547, 560 (1892) (constitutional challenge to a federal immunity statute conferring transactional immunity). But see State v. Belanger, 210 P.3d 783, 787, 788 (N.M. 2009) (explaining that, in New Mexico, while transactional immunity is a "legislative prerogative because it amounts to a decision by the people to exclude an entire class of individuals from application of the state's criminal laws," use immunity, which "serves to establish an evidentiary safeguard to protect the right against self-incrimination," is governed by court rule (quotation omitted)). The United States Supreme Court has held that, under the Federal Constitution, use and derivative use immunity is coextensive with the scope of the Fifth Amendment privilege against compulsory self-incrimination, noting that transactional immunity "affords the witness considerably broader protection than does the Fifth Amendment privilege." Kastigar, 406 U.S. at 453.

In New Hampshire, prosecutors are authorized, by statute, to grant use and derivative use immunity. See RSA 516:34 (2007); see also State v. Kivlin, 145 N.H. 718, 721 (2001) (explaining that, pursuant to statute, "the State, with authorization from the attorney general or county attorney, may grant a witness use immunity and request the trial court to order the witness to testify"); State v. Roy, 140 N.H. 478, 480-81 (1995) (noting that the statute "vests with the State the power to request that a witness, who has asserted his or her privilege against self[-]incrimination, be ordered to testify in exchange for a grant of use immunity where the testimony is necessary to the public interest" (emphasis and quotation omitted)).

Distinguished from immunity authorized by statute or court rule, the type of immunity at issue in this case is so-called "Garrity immunity," which applies in the public employment context. See Garrity v. New Jersey, 385 U.S. 493 (1967). Garrity immunity "is Supreme Court-created and self-executing; it arises by operation of law; no authority or statute needs to grant it." United States v. Veal, 153 F.3d 1233, 1239 n.4 (11th Cir. 1998).

4

In Garrity, the Attorney General of New Jersey investigated the alleged fixing of traffic tickets. Garrity, 385 U.S. at 494. The police officers being investigated were told that if they did not answer questions, they would be subject to removal from office. Id. As the Court noted, "No immunity was granted, as there [was] no immunity statute applicable" under the circumstances. Id. at 495. After the police officers answered the questions, some of their statements were used in a subsequent criminal proceeding against them. Id.

Agreeing with the police officers that their statements had been coerced, the Court stated that "[t]he choice given [to them] was either to forfeit their jobs or to incriminate themselves," and that "[t]he option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent." Id. at 497. Analogizing this practice to the interrogation practices in Miranda v. Arizona, 384 U.S. 436, 464-65 (1966), the Court reasoned that the statements provided by the police officers were "infected by the coercion inherent in this scheme of questioning" and could not be sustained as voluntary. Id. at 497-98 (footnote omitted). Accordingly, as a remedy, the Court held that "the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office," and that this right "extends to all, whether they are policemen or other members of our body politic." Id. at 500.

Following Garrity, the Court addressed the claims of a police officer who was dismissed because he refused to waive his privilege against self-incrimination. Gardner v. Broderick, 392 U.S. 273, 274 (1968). The police officer had been ordered to appear before a grand jury to answer questions "concerning the performance of his official duties." Id. Under threat of termination, he was asked to sign a "waiver of immunity." Id. (quotation omitted). He was subsequently discharged solely for his refusal to sign the waiver. Id. at 274-75.

The Court acknowledged that the privilege against self-incrimination "may be waived in appropriate circumstances if the waiver is knowingly and voluntarily made" and that "[a]nswers may be compelled regardless of the privilege if there is immunity from federal and state use of the compelled testimony or its fruits in connection with a criminal prosecution against the person testifying." Id. at 276. However, the Court distinguished the case before it in which the police officer was discharged from office "not for failure to answer relevant questions about his official duties, but for refusal to waive a constitutional right," thereby "relinquish[ing] the protections of the privilege against self-incrimination." Id. at 278. Because "[h]e was dismissed solely for his refusal to waive the immunity to which he [was] entitled" under Garrity, the Court held that state law requiring his dismissal could not stand. Id. at 278-79.

5

In a decision issued the same day as Gardner, the Court observed that, although public employees are entitled "like all other persons" to the benefit of the privilege against self-incrimination, "being public employees," they "subject themselves to dismissal if they refuse to account for their performance of their public trust, after proper proceedings, which do not involve an attempt to coerce them to relinquish their constitutional rights."  Sanitation Men v. Sanitation Comm'r, 392 U.S. 280, 284-85 (1968).[2]

The Court subsequently underscored that its decisions in Garrity, Gardner, and Sanitation Men "ultimately rest on a reconciliation of the well-recognized policies behind the privilege of self-incrimination, and the need of the State . . . to obtain information to assure the effective functioning of government," noting that "[i]mmunity is required if there is to be rational accommodation between the imperatives of the privilege and the legitimate demands of government to compel citizens to testify."  Lefkowitz v. Turley, 414 U.S. 70, 81 (1973) (citation and quotation omitted).  The Court reiterated that

> [a]lthough due regard for the Fifth Amendment forbids the State to compel incriminating answers from its employees and contractors that may be used against them in criminal proceedings, the Constitution permits that very testimony to be compelled if neither it nor its fruits are available for such use.  Furthermore, the accommodation between the interest of the State and the Fifth Amendment requires that the State have means at its disposal to secure testimony if immunity is supplied and testimony is still refused.  This is recognized by the power of the courts to compel testimony, after a grant of immunity, by use of civil contempt and coerced imprisonment.  Also, given adequate immunity, the State may plainly insist that employees either answer questions under oath about the performance of their job or suffer the loss of employment.

Id. at 84 (citations omitted).

In its most recent decision on this topic, after citing Garrity and Gardner, the Court observed that "[o]nce proper use immunity is granted, the State may use its contempt powers to compel testimony concerning the conduct of public

---

[2] The Court of Appeals for the First Circuit has explained that, "together, Garrity and Gardner stand for the proposition that a government employee who has been threatened with an adverse employment action by [the] employer for failure to answer questions put to [the employee] by [the] employer receives immunity from the use of [the employee's] statements or their fruits in subsequent criminal proceedings, and, consequently, may be subject to such an adverse employment action for remaining silent."  Sher v. U.S. Dept. of Veterans Affairs, 488 F.3d 489, 501 (1st Cir. 2007).  "Under these circumstances, no specific grant of immunity is necessary:  It is the very fact that the testimony was compelled which prevents its use in subsequent proceedings, not any affirmative tender of immunity."  Id. at 502 (quotation omitted).

office, without forfeiting the opportunity to prosecute the witness on the basis of evidence derived from other sources." Lefkowitz v. Cunningham, 431 U.S. 801, 809 (1977). The Court rejected the State's contention that being "forced to choose between an accounting from or a prosecution of a [public] officer" was "an intolerable position." Id. at 808-09. The Court noted that the claimed "dilemma" was created by the State's transactional immunity law and that "[t]he more limited use immunity required by the Fifth Amendment would permit the State to prosecute [the public official] for any crime of which he may be guilty in connection with his [public] office, provided only that his own compelled testimony [was] not used to convict him." Id. at 809.

Although acknowledging the above "general principles regarding compelled statements by public employees," the defendant asserts that, pursuant to this court's 1878 decision in Nowell, and our "reaffirm[ance]" in Wyman v. DeGregory, 101 N.H. 171, 174 (1957), the only type of immunity that comports with the New Hampshire Constitution's prohibition against self-incrimination is transactional immunity. (Capitalization and bolding omitted.) The trial court rejected this argument, concluding that the language in Nowell relied upon by the defendant is non-binding dicta.

In Nowell, we were asked to determine whether a statute that provided transactional immunity to any "clerk, servant, or agent of any person accused" of violating a law prohibiting the sale of intoxicating liquors who was called to testify "against his principal" was constitutional. Nowell, 58 N.H. at 315 (quotations omitted). We concluded that the statute was "consistent with" Part I, Article 15. Id. at 314-15. In the course of reaching our decision, we used language that suggested that a statute that conferred less than transactional immunity would be insufficient to satisfy the constitution. See id. at 315. The trial court here explained that this language did not constitute binding precedent because "the court [in Nowell] was only asked to pass upon the constitutionality of the statute at issue, which provided transactional immunity," and "was not asked to decide whether something less than transactional immunity — such as use and derivative use immunity — would suffice for purposes of Part I, Article 15." Thus, the trial court reasoned, "[a]lthough the [Nowell court] answered this question anyway, that answer is not controlling authority because it is judicial dictum — it is effectively an advisory opinion on the constitutionality of a differently worded statute." Further, the trial court reasoned that our "ostensible reaffirmation of Nowell" in DeGregory "suffers from the same infirmity" because, in the latter case, we "again considered and upheld a transactional immunity statute." See DeGregory, 101 N.H. at 174 (explaining that "an immunity statute which protects a witness against criminal conviction in our state courts from disclosures which he may be compelled to make satisfies" the requirements of Part I, Article 15).

7

We agree with the trial court's analysis and conclude that neither Nowell nor DeGregory control the determination of whether the use and derivative use immunity remedy provided by Garrity and its progeny to a government employee for statements compelled by his public employer under threat of an adverse employment action satisfies the privilege against self-incrimination under the State Constitution. "Historically the privilege against compelled self-incrimination originated as a reaction to the practice in the early English courts of compelling a witness to be sworn and give testimony concerning his guilt." State v. Cormier, 127 N.H. 253, 255 (1985) (quotation and brackets omitted). Therefore, we have recognized that under Part I, Article 15, "[b]y definition, self-incrimination contemplates the use of the defendant's statements to aid in establishing the guilt of the defendant." Marchand, 164 N.H. at 32 (quotation and brackets omitted) (emphasis added).

The immunity provided in a Garrity context prohibits the use of the government employee's "compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant." Turley, 414 U.S. at 78. Thus, when provided such immunity as a remedy for his compelled testimony, the defendant is "in substantially the same position" as if he had remained silent. Murphy v. Waterfront Comm'n, 378 U.S. 52, 79 (1964). The defendant is not exposed to criminal liability based upon any statements provided to his employer and the State may not use the defendant's compelled statements or any "fruits" thereof to "aid in establishing the guilt of the defendant" in a subsequent criminal proceeding. Marchand, 164 N.H. at 32 (quotation omitted); see Kastigar, 406 U.S. at 460 (explaining that the prosecution has "the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony").

Given that we have recognized that it is the impermissible use of compelled testimony that the privilege against self-incrimination embodied in Part I, Article 15 protects, if the compelled testimony cannot be put to any use whatsoever by the State in a criminal prosecution against the defendant, his privilege against self-incrimination is not infringed. See Murphy, 378 U.S. at 79. The privilege against self-incrimination "has never been construed to mean that one who invokes it cannot subsequently be prosecuted"; rather, "[i]ts sole concern is to afford protection against being forced to give testimony leading to the infliction of penalties affixed to criminal acts." Kastigar, 406 U.S. at 453 (quotations and ellipses omitted); cf. Marchand, 164 N.H. at 33 (holding that the privilege against self-incrimination under the State Constitution would not be violated by compelling a psychological examination of the defendant "because the proposed examination would not be used by the State to prove . . . the guilt of the defendant"). Accordingly, we conclude that the use and derivative use immunity that applies by operation of law when a government employee is compelled to provide a statement in the Garrity context is sufficient to achieve a proper balance between the employee's privilege against self-

8

incrimination under Part I, Article 15 and the State's interest in enforcing its criminal laws.

We have recognized that the privileges contained in Part I, Article 15 of the State Constitution and the Fifth Amendment to the Federal Constitution are "comparable in scope." Knowles, 140 N.H. at 391; see Marchand, 164 N.H. at 31. Nonetheless, the defendant contends that Part I, Article 15 should be interpreted more broadly than the Fifth Amendment in this context, relying, in particular, upon the Massachusetts Supreme Judicial Court's interpretation of a provision in the Massachusetts Constitution that is identical to Part I, Article 15. See Carney v. City of Springfield, 532 N.E.2d 631 (Mass. 1988).

In Carney, the Supreme Judicial Court held that Part I, Article 12 of the Massachusetts Declaration of Rights "requires transactional immunity to supplant the privilege against self-incrimination, even in the context of public employment." Id. at 635-36 (footnote omitted). Despite acknowledging that it had "never before faced the question whether transactional immunity is needed to overcome a claim of testimonial privilege by a public employee," the court provided no analysis to support its conclusion that transactional immunity is required in such circumstances; nor did it cite any historical evidence that such was the intent of the framers of the Massachusetts Constitution. See id. at 636. The court nonetheless "exercised its prerogative to interpret . . . the Massachusetts Constitution's privilege against self incrimination . . . more broadly than its Federal counterpart." Id. at 635. Thus, although we "give weight to" the Massachusetts court's interpretation of language in its constitution that is identical to that found in our constitution, Roache, 148 N.H. at 49, for the reasons just stated we find the Carney decision unpersuasive. We note that the defendant has not developed an argument that either the text or the history that led to the adoption of Part I, Article 15 of the State Constitution supports a construction of this provision that differs from the construction of the Federal Constitution in Kastigar. See generally State v. Bradberry, 129 N.H. 68, 82-83 (1986) (Souter, J., concurring specially).

Finally, the defendant argues that "there can be no adequate procedural protection against a prosecutor's non-evidentiary use of compelled statements." Given that there is no record in this case to support this contention, we decline to address it. Accordingly, we affirm the trial court's denial of the defendant's motion to dismiss the charges against him and remand for further proceedings consistent with this opinion.

Affirmed and remanded.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

9